UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

SHAUN P. GARVEY,

                            Plaintiff,

                                                            5:18-CV-00255
v.                                                          (TJM/TWD)


WEGMANS, ONONDAGA COUNTY SHERIFF'S
DEPARTMENT,

                            Defendants.
───────────────────────────────────────

APPEARANCES:

SHAUN P. GARVEY
Plaintiff, *pro se*
P.O. Box 12
Liverpool, New York 13090


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983

civil rights action brought by *pro se* Plaintiff Shaun P. Garvey against Defendants Wegmans and

the Onondaga Sheriff's Department ("Sheriff's Department").  (Dkt. No. 1.)  Also before the

Court are Plaintiff's application for leave to proceed *in forma pauperis* ("IFP Application") and

motion for appointment of counsel.  (Dkt. Nos. 2 and 3.)

## II.     IFP APPLICATION

The Court finds that Plaintiff has demonstrated the requisite economic need to proceed with this matter *in forma pauperis*.  As a result, Plaintiff's IFP Application (Dkt. No. 2) is granted.

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.    PLAINTIFF'S COMPLAINT

Plaintiff alleges that Wegmans and the Sheriff's Department negligently handled a series of harassment complaints against Plaintiff made by Wegmans, which resulted in Plaintiff's arrest for aggravated harassment.[1]  (Dkt. No. 1 at 2-4.[2])  Plaintiff alleges that he was "found criminally not guilty or [the charge] was dismissed with prejudice."  *Id*. at 2.  Documents Plaintiff has annexed to his complaint include an arrest report showing that he was arrested on a charge of aggravated harassment in the second degree, N.Y. Penal Law § 240.30(2).[3]  *Id*. at 5.

Plaintiff claims that he: (1) was falsely imprisoned "due to sheriffs not providing a warrant, for [his] arrest and mishandling all associates paperwork"; (2) lost his apartment as a result of police presence; (3) lost his mother and money; and (4) suffered emotional distress.  *Id*. at 3.  Plaintiff seeks monetary damages in the amount of $15,000 from Wegmans and $25,000 from Onondaga County.  *Id*. at 4.

The voluntary affidavit of Richard Wille, assistant asset protection manager at the Wegmans store on Oswego Road in Cicero, given to Sheriff's Department Deputy N. VanDyke

---

[1]    Plaintiff has sued the Onondaga County Sheriff's Department which, under New York law, is an administrative arm of Onondaga County, has no independent legal identity, and may not sue or be sued.  *See Jenkins v. Onondaga County Sheriff's Department*, No. 5:12-CV-855 (GTS/ATB), 2012 WL 4491134, at *2 (N.D.N.Y. June 28, 2012).  Because Plaintiff is proceeding *pro se*, the Court will construe his claims as being brought against the County of Onondaga for purposes of initial review.

[2]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[3]    Penal Law § 240.30(2), a class A misdemeanor, provides that "A person is guilty of aggravated harassment in the second degree when . . . [w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."

4

on September 15, 2017, is also attached to the complaint. *Id*. at 6. According to Wille, on September 4, 2017, Sheriff's Department Deputy Rinaldi issued a no trespass order banning Plaintiff from all Wegmans locations after he had made a threatening call to Wegmans pharmacists. *Id*. Thereafter, Plaintiff called the store multiple times and was told to stop calling. *Id*. Wille received an email from the pharmacy manager on September 11, 2017, stating they had received threatening calls from Plaintiff.

According to Wille, he called the Sheriff's Department again on September 14, 2017, after the Oswego Road store, the service center, and pharmacy center in Rochester had received multiple calls from Plaintiff using vulgar language and threats such as "I'm going to run my car into the front of the building," and "I'm going to come in guns a blazin." *Id*. Sheriff's Department Deputy Redshaw contacted Plaintiff and told him not to call Wegmans again. *Id*. Shortly thereafter, Plaintiff called the Cicero store twenty-three times between 7:50pm and 8:49pm the evening of September 14, 2017. *Id*. Wille received a call from the Cicero store at 7:15am the next day informing him that Plaintiff was calling again. *Id*. Plaintiff called the Cicero service department eighty-four times beginning at 7:00am, the Cicero pharmacy department twenty-five times starting at 8:30am, and made multiple calls to the division office in Rochester, with the last call being made at 9:43am. *Id*. Wille thereafter contacted the Sheriff's Department and expressed a desire to prosecute Plaintiff for the harassing phone calls and threats. *Id*.

In a September 15, 2017, voluntary affidavit, Maureen E. Hall, an employee in the Cicero Wegmans pharmacy department, stated she had received multiple calls which she recognized as being from Plaintiff, with whom she had previously dealt as a customer in the store. *Id*. at 8. According to Hall, there were multiple harassing conversations in which Plaintiff said "Hey girl,

I'm not going away" over and over, as well as "I will destroy you, you bitch," and "you're a cunt bag." *Id*.

Deputy VanDyke completed a Misdemeanor Information on September 15, 2017, requesting that Plaintiff be charged with aggravated harassment in the second degree for his conduct in intentionally calling the Cicero Wegmans over 100 times between 7:00am and 9:43am on September 15, 2017, using vulgar language and threatening employees with no purpose of legitimate communication. *Id*. at 14.  A temporary order of protection was issued by the Cicerco Town Court on September 15, 2017, prohibiting Plaintiff from engaging in any communications with, or engaging in any harassing conduct with Wille.  *Id*. at 9.

Plaintiff alleges in conclusory fashion and without factual support that there is "no supportable truth" to the claim of aggravated harassment.  *Id*. at 4.

## V.    ANALYSIS

### A.    Plaintiff's 42 U.S.C. § 1983 Claim Against Wegmans

Plaintiff alleges that Wegmans negligently handled a series of harassment complaints against him resulting in his false arrest for aggravated harassment.  (Dkt. No. 1.)

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  "The purpose of § 1983 is to deter state actors from

6

using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The requirement that a defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200L, 2008 WL 4758706, at*2 (W.D.N.Y. Oct. 29, 2008)[4] (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the state itself." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations and internal quotation marks omitted).

---

[4] Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Wegmans is a family owned regional supermarket chain founded in 1916 and headquartered in Rochester, New York. *See* https://www.wegmans.com/about-us/company-overview.html (last visited April 11, 2018).[4] The Court, therefore, finds that Wegmans is a private actor. "The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010); *see also Lienau v. Garcia*, No. 12-CV-6572 (ER), 2013 WL 6697834, at *6 (S.D.N.Y. Dec. 19, 2013) (collecting cases).

Inasmuch as Wegmans is a private actor, and Plaintiff's allegations against Wegmans do not involve conduct that could be construed as joint action with the Sheriff's Department, the Court recommends dismissal of Plaintiff's § 1983 claim against Wegmans with prejudice.

**B.     Plaintiff's 42 U.S.C. § 1983 Claim Against Onondaga County**

1.     Failure to State a Claim

Plaintiff has alleged a § 1983 claim against Onondaga County based on the negligence of the Sheriff's Department and false arrest in violation of his Fourth Amendment rights. (*See generally* Dkt. No. 1.) As noted above, because the Sheriff's Department is not suable, the Court is treating the County of Onondaga as Defendant for purposes of this initial review.

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983 against the County of Onondaga, Plaintiff must plead

---

[4]     *See Gonzales v. National Westminster Bank PLC*, 847 F. Supp. 2d 567, 569 n.2 (S.D.N.Y. 2012) ("Courts may take judicial notice of publicly available information including newspaper articles and other public disclosures.").

and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")  A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).  To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged."  *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County or the Sheriff's Department which caused his allegedly false arrest, and Plaintiff has not alleged facts plausibly showing that Onondaga County or the Sheriff's Department failed to properly hire, supervise, and train subordinates in connection with his claims.  *See Twombly*, 550 U.S. at 570; *Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)  Therefore, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendant County of Onondaga.

2.    Futility of Amendment

Ordinarily the Court would be inclined to recommend dismissal of Plaintiff's § 1983 claim against Onondaga County with leave to amend in light of his *pro se* status.  However, because as discussed below, it finds amendment would be futile in this case, the Court recommends dismissal with prejudice.

Plaintiff alleges the Sheriff's Department negligently handled a series of harassment complaints made against him by Wegmans.  (Dkt. No. 1 at 2-4.)  Because negligence is not actionable under § 1983, allowing Plaintiff amend his *Monell* claim with regard to negligence would be futile.  *See Daniel v. Williams*, 474 U.S. 327, 330-32 (1986) ("Where a government official's act causing injury to his life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required.") (emphasis in original).

Plaintiff also alleges false arrest.  *Id*.  The elements of a § 1983 claim for false arrest in violation of the Fourth Amendment, which are essentially the same as a state law claim for false arrest, are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (internal citation and quotations marks omitted).

Here, Plaintiff has not alleged facts plausibly showing a § 1983 claim for false arrest. Plaintiff has alleged only that he was arrested (Dkt. No. 1 at 2, 3).  Plaintiff has not alleged any facts plausibly showing that he was at any point confined in connection with the arrest.  Even if he had, the documents Plaintiff has chosen to attach to his complaint establish probable cause for his arrest, thereby defeating his false arrest claim.

10

On initial review under 28 U.S.C. § 1915(e)(2)(B), the Court may consider facts set forth in exhibits attached as a part of the complaint as well as in the complaint itself. *Arya v. Ensil Technical Services, Inc*., No. 12-CV-925S, 2012 WL 6690326, at *1 n.1 (W.D.N.Y. Dec. 19, 2012) (citing *Chance v. Armstrong*, 143 F.3d 698, 700 n.1 (2d Cir. 1998). Where documents annexed to the complaint "contradict the allegations in a complaint, the court need not accept those conclusory assertions as true." *Batson v. RIM San Antonio Acquisition, LLC*, No. 15-cv-07576 (ALC), 2018 WL 1581675, at *5 (S.D.N.Y. Mar. 27, 2018); *see also Gwaltney v. Lithford*, No. 1:16CV426, 2016 WL 3255026, at *2 n.1 (M.D. N.C. June 13, 2016) (documents attached to the complaint that seemingly contradicted assertions in the complaint rendered the action frivolous and subject to dismissal on initial review); *Gilmore v. Downey*, No. No: 13-2239-JMB-DGB, 2013 WL 6489971, at *2 (C.D. Ill. Dec. 10, 2013) (acknowledging on initial review under 28 U.S.C. § 1915(e)(2)(B) that a *pro se* plaintiff may plead himself out of court and that when documents attached to the complaint contradict the conclusory allegations in the complaint the documents trump the allegations).

A district court must dismiss an *in forma pauperis* action if the action is "based on an indisputably meritless legal theory." *Livingston*, 141 F.3d at 437 (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir, 1990) (per curiam) (internal citation and quotation marks omitted)). A claim is based on an "indisputably meritless legal theory" when "a dispositive defense clearly exists on the face of the complaint." *Id*. The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852).

In general, probable cause is established where "[t]he [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). "The validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "The court looks only to the information the arresting officer had at the time of the arrest." *Id.*; *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." (emphasis in original) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). "Once an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

The documents attached to the complaint by Plaintiff include the affidavits of Wille, the assistant asset protection manager of the Cicero Wegmans, and Maureen Hall, an employee in the pharmacy department in the Cicero Wegmans, both of whom state under penalty of perjury that Plaintiff had made numerous harassing and threatening calls to Wegmans during September 2017, despite having been told not to call. (Dkt. No. 1 at 7, 8.) According to Wille, Plaintiff called the Cicero Wegmans over 100 times during an approximately three hour period the morning of September 15, 2017, after Deputy Redshaw had called Plaintiff the night before in response to a complaint from Wegmans and told him to stop calling. *Id.* A misdemeanor

information was completed by Deputy VanDyke on September 15, 2017, after being advised of the calls by Wille.  *Id*. at 14.  A temporary order of protection requiring Plaintiff to stay away from Wille and his place of business was issued by the Cicero Court the same day.  *Id*. at 13.

In his complaint, Plaintiff has not denied making the phone calls to Wegmans or making the statements attributed to him.  (*See* Dkt. No. 1.)  Rather, Plaintiff claims Wegmans and the Sheriff's Department were negligent in the handling of his complaints over customer service.  *Id*. at 3.  The Court finds that the information given the Sheriff's Department by Wille and Hall regarding Plaintiff's harassing and threatening phone calls prior to the issuance of the misdemeanor information was "sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Finigan,* 574 F.3d at 368; *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").  That finding, along with Plaintiff's non-denial of the calls to the Cicero Wegmans, provide sufficient grounds for the Court to conclude that documents attached to Plaintiff's complaint, on their face, show probable cause for his arrest, and that his false arrest claim is "based on an indisputably meritless legal theory," rendering amendment of the claim futile.  *Livingston*, 141 F.3d at 437.

### C.    State Law Negligence and False Arrest Claims

Inasmuch as the Court is recommending that Plaintiff's federal claims against the Defendants be dismissed without leave to amend, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence and false arrest claims, without prejudice and subject to refiling in state court and to reconsideration in the event

the District Court does not accept this Court's recommendation for dismissal of Plaintiff's §
1983 claims without leave to amend.  *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118,
120 (2d Cir. 2006).

>    **D.**    **Motion for Appointment of Counsel**

Plaintiff has moved for appointment of counsel.  (Dkt. No. 3.)  Even if the Court were not
recommending dismissal of his complaint without leave to amend, a more fully developed record
would be necessary before an assessment can be made as to whether counsel should be
appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the
likelihood of merit of the underlying dispute in determining whether to appoint counsel).
Therefore, the motion is denied.

The denial is without prejudice so that Plaintiff will not be precluded from making a
subsequent motion for appointment of counsel in the event the District Court allows the action to
proceed, and Plaintiff demonstrates that he has been unable to obtain counsel through the private
sector or public interest firms.  *See Cooper v. A. Sargenti Co.*, *Inc.*, 877 F.2d 170, 173-74 (2d
Cir. 1989) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

>    **WHEREFORE**, it is hereby

>    **ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is

>    **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS
ENTIRETY** on initial review pursuant to 28 U.S.C. § 1915(3)(2)(B); and it is further

>    **RECOMMENDED** that dismissal of Plaintiff's § 1983 claims be **WITH PREJUDICE
AND WITHOUT LEAVE TO AMEND**; and it is further

>    **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over
Plaintiff's state law negligence and false arrest claims; and it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) be **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation and copies of the unpublished decisions cited herein on Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 12, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 6690326
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kevan ARYA, Plaintiff,

v.

ENSIL TECHNICAL SERVICES, INC., Defendant.

No. 12–CV–925S.
|
Dec. 19, 2012.

**Attorneys and Law Firms**

Rafael Solar, Brooklyn, NY, pro se.

**Opinion**

### DECISION and ORDER

WILLIAM M. SKRETNY, Chief Judge.

### *INTRODUCTION*

**\*1** Plaintiff, Kevan Arya, has filed this pro se action against Ensil Technical Services, Inc. ("Ensil"), his former employer, alleging that he was wrongfully terminated in retaliation for a complaint he made to the United States Occupational Health and Safety Administration ("OSHA") relating to unsafe working conditions. Plaintiff also alleges that in Ensil's formal response to his OSHA complaint, Ensil made false accusations against him and defamed him when it asserted, *inter alia,* that Plaintiff was not competent to perform the work of an Electronic Repair Technician. (Docket No. 1, Complaint, ¶ ¶ 1, 2, 3.1, "Relief," ¶ 3, and Attachment 1 (Ensil's attorney's letter to OSHA in response to Plaintiffs complaint to OSHA alleging retaliation.[1]) Plaintiff seeks reinstatement, backpay, and $250,000 in punitive damages. For the following reasons, Plaintiff's motion to proceed *in forma pauperis* is granted and the complaint must be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

### *DISCUSSION*

Because he has met the statutory requirements of 28 U.S.C. § 1915(a), Plaintiff is granted permission to proceed *in forma pauperis.*

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (citing *Shakur v. Selsky,* 391 F.3d 106, 112 (2d Cir.2004)). Additionally, the issue of "[f]ederal subject matter jurisdiction may be raised at any time during litigation and must be raised *sua sponte* when there is an indication that jurisdiction is lacking." *Hughes v. Patrolmen's Benevolent Assoc. of the City of New York, Inc.,* 850 F.2d 876, 881 (2d Cir.1988), *cert. denied* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (citations omitted).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Moreover, "a court is obliged to construe [*pro se* ] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Abbas,* 480 F.3d at 639 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

**\*2** Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). "Specific facts are not necessary," and the Plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it

rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp,* 521 F.3d 202, 213 (2d Cir.2008) (discussing pleading standard in *pro se* cases after *Twombly* ).

"A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94, 127 S.Ct. at 2200 (internal quotation marks and citations omitted). Generally, the Court will afford a *pro se* Plaintiff an opportunity to amend or to be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas,* 480 F.3d at 639 (2d Cir.2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999) (*per curiam* )).

Based on its evaluation of the complaint, the Court finds that Plaintiff's claims must be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because they fail to state a claim upon which relief may be granted and because the Court lacks subject-matter jurisdiction over Plaintiff's claims.

### A. Plaintiff's CLAIMS

As noted above, Plaintiff alleges that he was wrongfully terminated by Ensil in retaliation for a complaint he made regarding health and safety conditions at Ensil and that Ensil defamed his character and made false accusations against him when it stated in its response to Plaintiff's OSHA complaint that Plaintiff was not competent to perform his job as a Technician with Ensil. The basis of jurisdiction is alleged to be "diversity" because Ensil's "employees are citizens of another country." (Complaint, ¶ 1.) Plaintiff alleges that his three co-workers were Canadian. (*Id.,* ¶¶ 1, 2.2, 2.4.)

Plaintiff was employed by Ensil from November 1 through November 17, 2010. According to OSHA's written findings regarding Plaintiff's retaliation complaint, Plaintiff contacted the New York State Public Employee Safety and Health Bureau on November 5, 2010, and complained that he was exposed to a spray coating without proper ventilation. This information was forwarded to OSHA, which conducted an investigation on November 12 and November 17, 2010, Ensil was

issued citations as a result of the OSHA investigation. (Complaint, Attachment 3.) *See* n. 1, *supra.*

### 1. OSHA Retaliation

To the extent Plaintiff claims herein that he has a claim under OSHA's anti-retaliatory provisions, *see* 29 U.S.C. § 660(c), it must be dismissed because "under OSHA, employees do not have a private right of action." *Donovan v. Occupational Safety and Health Review Comm'n,* 713 F.2d 918, 926 (2d Cir.1983) (citing *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980)); *see also Vinson v. New York City Dep't of Corr.,* 2006 WL 140553, at * 8 (E.D.N.Y. Jan.17, 2006) (("OSHA does not contain a private right of action."). Accordingly, any claim of retaliation by Plaintiff against Ensil for Plaintiff's complaint of an OSHA violation cannot be sustained in this Court under OSHA. *See Taylor,* 616 F.2d at 262–63 (holding that OSHA did not create a private right of action whereby employees discharged in retaliation for reporting safety violations could maintain a suit against their former employers).

### 2. Wrongful Termination/Defamation: Subject–Matter Jurisdiction

**\*3** Plaintiff's complaint can also be construed as alleging claims of wrongful termination, defamation, and intentional infliction of emotional distress. (Complaint, ¶ 1 and Relief, ¶ 1.) *See, e.g ., Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) ("the pleadings of a pro se Plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they could suggest' ") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). These claims must be dismissed because (1) the Court does not have subject-matter jurisdiction over them, *see* 28 U.S.C. § 1332, and (2) the Court declines to exercise supplemental jurisdiction over them, *see id.,* § 1367(c).

To the extent Plaintiff's claims can be construed as alleging claims of wrongful termination, defamation, and intentional infliction of emotional distress, these claims are, at most, state law claims.[2] For a federal district court to have subject-matter jurisdiction over state law claims, Plaintiff must plead diversity of citizenship jurisdiction. It is well-settled that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enterprises,*

*Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 160 (2d Cir.1998) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). "In other words, federal subject-matter jurisdiction based on diversity is unavailable unless [Plaintiff's] pleadings demonstrate that it does not share citizenship with any of the defendants-appellees." *Advani Enterprises, Inc., id.* (citing *John Birch Society v. National Broad. Co.,* 377 F.2d 194, 197 (2d Cir.1967)).

Plaintiff's complaint alleges that the basis of jurisdiction is "diversity ... because the involved defendant's employees are citizens of another country." (Complaint, ¶ 1.) Ensil, the defendant and Plaintiff's former employer, is alleged to be "located in New York" and the complaint provides an address for Ensil in Lewiston, New York. (Complaint, Caption and ¶ 1.) These allegations fail to demonstrate diversity of citizenship of jurisdiction because Plaintiff and defendant are both "citizens" of the same state. *See* 28 U.S.C. § 1332(a)(1) and (c). Plaintiff provides an address for himself in Niagara Falls, New York, and a corporation is deemed a citizen of both the state in which it is incorporated and the state where it has its principal place of business. (*Id., § 1332(c)).* Because both Plaintiff and Ensil are citizens of New York, Plaintiff has failed to demonstrate that this Court has jurisdiction over any remaining state law claims. Accordingly, the complaint must be dismissed for lack of subject-matter jurisdiction.

While the Court recognizes that it may dismiss a case *sua sponte* for lack of subject-matter jurisdiction, generally a district court must provide Plaintiff with notice and an opportunity to be heard before dismissal. *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994) ("The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim, so long as the Plaintiff is given notice and an opportunity to be heard .") (internal citations and quotation marks omitted); *Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (*sua sponte* dismissal of complaint for failure to state a claim is improper unless the Plaintiff is given notice and an opportunity to respond). The Court finds, however, that providing Plaintiff with notice and leave to file an amended complaint would be futile because Plaintiff fails to state a claim of either defamation or intentional infliction of emotional distress.

**\*4** Even assuming Plaintiff's complaint states a claim for defamation under New York law,[3] the alleged

defamatory statements were made in Ensil's response to Plaintiff's formal complaint of retaliation with the OSHA. Those statements are therefore subject to the absolute privilege that attaches to alleged defamatory statements "made prior to, in the institution of, or during the course of, a proceeding." *Long v. Marubeni Am. Corp.,* 406 F.Supp.2d 285, 293–95 (S.D.N.Y.2005) (discussing the absolute privilege that attaches to "defamatory statements made prior to, in the institution of, or during the course of, a proceeding" (quoting Sack on *Defamation: Libel, Slander, and Related Problems,* § 8.2.1.4 at 8–14 (2004)); *see also Weitz v. Wagner,* 2008 WL 5605669, at * 7 (E.D.N.Y., August 8, 2008) (Report & Recommendation adopted by District Judge Korman, August 11, 2008) ("Statements uttered in the course of a judicial or quasi-judicial proceeding are absolutely privileged so long as they are material and pertinent to the questions involved notwithstanding the motive with which they are made ....") (internal citations and quotation marks omitted). This privilege applies equally to statements submitted to agencies such as OSHA. *See Daniels v. Alvarado,* 2004 WL 502561, at ——7–8 (E.D.N.Y. Mar.12, 2004) (Plaintiff's libel claim against defendants for statements submitted on behalf of their employer to the New York State Division of Human Rights are protected by absolute privilege); *Allen v. St. Cabrini Nursing Home, Inc.,* 2001 WL 286788, at *6 (S.D.N.Y. Mar.9, 2001) (dismissing defamation claim based on employer's submission to the EEOC; *Hinds v. Magna Fabrics, Inc.,* 1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997) ("It is well settled in New York ... that statements made in quasi-judicial proceedings, including proceedings by agencies such as the EEOC, are protected by an absolute privilege."). This Court finds no basis to distinguish OSHA from the EEOC or New York State Division of Human Rights ("NYSDHR"), for purposes of the privilege. *See Viruet v. Citizen Advice Bureau,* 2002 WL 1880131, at *23 (August 15,2002) (the absolute privilege applied to employer's statements made to New York State Department of Labor regarding Plaintiff's eligibility for unemployment benefits).

Similarly, Plaintiff's "claim" of intentional infliction of emotional distress, fails to state a claim upon which relief can be granted and therefore would be subject to dismissal even if the Court had subject-matter jurisdiction over it. To sustain a claim for intentional infliction of emotional distress in New York, Plaintiff must satisfy four elements: (1) extreme and outrageous conduct; (2) intent to cause,

or disregard of a substantial probability of, causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993) (N.Y.1993). The extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable to a civilized community." *Murphy,* 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90 (internal quotations and citation omitted).

**\*5** The statements made by Ensil's attorneys in Ensil's response to the OSHA retaliation complaint relating to the reasons for Plaintiff's termination fall far short of any type of extreme and outrageous conduct that would support a claim of intentional infliction of emotional distress. *See Alexander v. Westbury Union Free School Dist.,* 829 F.Supp.2d 89 (E.D.N.Y. Nov.4, 2011) ("Courts have rarely recognized a claim for intentional infliction of emotional distress in an employment context, and when they have, the claim also included a claim of sexual battery.") (internal quotations and citation omitted).

Accordingly, because Plaintiff's remaining state law claims fail to state a claim upon which relief can be granted, there is no basis to provide Plaintiff leave to amend his complaint to establish that this Court has subject-matter jurisdiction over Plaintiff's state law claims.

Lastly, even assuming the complaint sufficiently alleged claims of defamation and intentional infliction of emotional distress, this Court would decline to exercise "supplemental jurisdiction" over them, see 28 U.S.C. § 1367(c), because the only federal claim set forth in Plaintiff;s complaint—OSHA retaliation claim—is being dismissed. *See, e.g., Castellano v. City of New York,* 142 F.3d 58, 74 (2d Cir.1998) ("In light of the district courts' proper dismissals of the federal claims ... district courts did not abuse their discretion in declining to exercise supplemental jurisdiction over the state claims." (citing 28 U.S.C. § 1367(c) (3); *Castellano v. Board,* 937 F.2d 752, 758–59 (2d Cir.1991) (affirming district court's dismissal of pendent state constitutional claims in light of dismissal of all federal constitutional claims)).

Footnotes

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a). Accordingly, Plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDERS

IT HEREBY IS ORDERED, that Plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is granted;

FURTHER, that the complaint is dismissed with prejudice and the motion for appointment of counsel (Docket No. 3) is denied as moot; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

**\*6** FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6690326

1   *See Chance v. Armstrong,* 143 F.3d 698, 698 n. 1 (2d Cir.1998) ("the court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself"); *see also Cortec Industries, Inc. v. Sum Holding LP.,* 949 F.2d 42, 47 (2d Cir.1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

2   New York does not recognize common law claims for wrongful termination. *See Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d., 293, 300–01, 461 N.Y.S.2d 232, 233, 448 N.E.2d 86 (1983).

3   To establish a claim for defamation, a Plaintiff must prove: "(1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Angio–Medical Corp. v. Eli Lily & Co.,* 720 F.Supp. 269, 272 (S.D.N.Y.1989) (citing Restatement (Second) of Torts § 558, at 155 (1964).

---

**End of Document**                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1581675
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Barry BATSON, et al., Plaintiffs,

v.

RIM SAN ANTONIO ACQUISITION,
LLC, et al., Defendants.

15-cv-07576 (ALC)
|
Signed March 26, 2018
|
Filed 03/27/2018

**Attorneys and Law Firms**

Alexander S. Valdes, Scott F. Courtney, Jr., James G. Ruiz, Winstead PC, Austin, TX, Leonard Anthony Rodes, Stephen Joseph Arena, Trachtenberg, Rodes, and Friedberg, New York, NY, for Plaintiffs.

Catherine E. Gaither, Kenneth C. Johnston, Steven J. Kubik, Robert Wesley Gifford, Kane Russell Coleman & Logan PC, Dallas, TX, April Elizabeth Lucas, Douglas D. Dodds, McGinnis, Lochridge & Kilgore, LLP, Austin, TX, Mark Kenneth Anesh, Philip John Furia, Anthony Proscia, Rebecca A. Barrett, Lewis, Brisbois, Bisgaard & Smith, LLP, New York, NY, Rex Whitehorn, Rex Whitehorn & Associates, P.C., for Defendants.

Opinion

## OPINION AND ORDER

ANDREW L. CARTER, JR., United States District Judge

**\*1** Plaintiffs charge Defendant Sichenzia Ross Friedman Ference, LLP ("Sichenzia") with violations of state securities laws, breach of escrow agreement, breach of fiduciary duty, aiding and abetting fraud, and negligence. Before this Court is Sichenzia's motion to dismiss Plaintiffs' Fourth Amended Complaint ("FAC") for failure to state any claims against it. For the following reasons, Sichenzia's motion is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are taken from the allegations contained in Plaintiffs' FAC as well as the parties' declarations submitted in connection with the instant motion to dismiss. Plaintiffs' allegations are presumed true for the purposes of this motion to dismiss.

In early 2013, Gunn & Partners, LLC ("Gunn & Partners") entered into an agreement with Bighorn Capital, Inc. ("Bighorn") to purchase property in San Antonio, Texas (the "Property") and then construct an apartment complex on the Property known as RIM ("RIM Project"). FAC ¶ 20-21. The entities planned to (1) enter into a limited liability operating agreement to form RIM and (2) simultaneously close on the Property. *Id.* ¶¶ 21; 23. In order to form RIM, Gunn & Partners was to contribute $500,000 in equity and Bighorn was to contribute $3,500,000 in equity ("RIM Transaction"). *Id.* ¶ 23.

The entities never formed RIM. On three separate occasions in March and April 2013, the parties were set to close, but Bighorn failed to provide his equity contribution. *Id.* ¶¶ 24-25.

### A. The RIM Offering

Meanwhile, Bighorn, Robert R. Entler ("Entler")—the President and Director of Bighorn—and Scott Morgan ("Morgan") created the "RIM Offering." *Id.* ¶ 26. The RIM offering was a private offering of 10% Promissory Notes purportedly to raise money for the RIM Project. *Id.*

Bighorn engaged John Carris Investments LLC ("Carris") as the exclusive placement agent for the RIM Offering. *Id.* ¶ 26. For this work, Carris would receive a broker's placement fee equal to 8% of the funds raised if the RIM offering closed. *Id.* ¶ 73. At that time, Carris provided various financial advisory services. *Id.* ¶ 27. In August 2014, Carris was expelled from the securities industry for fraud and suitability violations. *Id.*

Carris hired Sichenzia, a New York-based securities firm, to represent it as placement agent counsel in connection with the RIM Offering. *Id.* Sichenzia eventually assumed other roles with respect to the RIM Offering, including (1)

drafting the Offering Memorandum, Notes, and Security Agreements; (2) serving as escrow agent; (3) accepting subscription payments and depositing such funds into its IOLA account; (4) serving as Collateral Agent under the Security Agreement for the benefit of Plaintiffs; and (5) agreeing to deliver the Notes to Plaintiffs upon closing or to refund the subscription payments to Plaintiffs if no closing occurred. *Id.* ¶¶ 34; 73-74; *see also* Pl Supp Mem at 8. Plaintiffs allege that Cams unilaterally appointed Sichenzia as Collateral Agent even though the Security Agreement provided that the investors would appoint the Collateral Agent. FAC ¶ 73.

**\*2** Plaintiffs further allege that the agreement did not provide for Sichenzia to be paid legal fees out of the escrow funds. *Id.* However, Sichenzia received approximately $41,000 in fees in connection with the RIM Offering, which were paid out of the escrow funds. *Id.*

### i. The Offering Memorandum

Sichenzia drafted the Offering Memorandum for the RIM Offering. *Id.* ¶ 29. Sichenzia did not speak with Entler, Morgan or Gunn about the proposed RIM Project before drafting the Offering Memorandum. *Id.* However, Entler and Morgan knew about, consented to, authorized, and/or assisted with its preparation. *Id.* ¶ 35.

The Memorandum, dated April 15, 2013, described the RIM Offering as a private offer and sale of up to $8,500,000 10% Promissory Notes ("Notes") in connection with the proposed development project on the Property. *Id.* ¶ 29. Under the Offering Memorandum, qualified subscribers would be issued Notes secured under a Security Agreement that granted a subscriber a first priority security interest against all of RIM's assets, including the Property to be purchased. *Id.* ¶ 63. The Notes matured 180 days after issuance, at which time full payment would be due. *Id.* If the Notes were repaid within 90 days of issuance, interest would accrue at 10% per annum; otherwise, the interest rate would increase to 12.5% per annum. *Id.* Additionally, Section 5 of the Note provided that the right to payment would be "senior to all debt of Borrower." *Id.* However, Plaintiffs allege that Section 5 was false because the Bank of the Ozarks was to obtain a first priority lien on the assets at the time the RIM Transaction closed. *Id.* The Bank's right would be superior to any rights obtained by subscribers. *Id.* Finally,

the Security Agreement promised to deliver a perfected security interest in the Property. *Id.* ¶ 64. Forms of the Note and Security Agreement that were to be issued were attached to the Offering Memorandum. *Id.*

The Offering Memorandum states that the summary of the offering is "for discussion purposes only and does not create any binding legal obligations, rights, or duties." Offering Memorandum (ECF No. 154-2 at 4). Instead, such binding obligations "will be set forth, if at all, in definitive transaction documents relating to the Transaction." *Id.*

### ii. Subscription Agreement

Section 1.1 of the Subscription Agreement states that some subscribers had already deposited funds with Heritage Title. FAC ¶ 72. However, Plaintiffs allege that no subscribers had done so in connection with the RIM Offering. *Id.*

Under the Subscription Agreement, the Notes purchased by subscribers were to be delivered within 15 business days following the closing. *Id.* ¶ 74.

### iii. Solicitation of Investors

Entler and Mark Caspers made a presentation to Carris' investment brokers as part of their efforts to secure potential investors. *Id.* ¶ 34. They represented that Caspers would develop the project and would protect Carris' clients' money because they were well funded and had an excellent track record. *Id.* Plaintiffs allege that Entler and Caspers knew that Carris would convey this information to his clients, including Plaintiffs, to induce them into investing in the RIM Offering. *Id.*

Plaintiffs Barry Batson, David Douthat, William Langer Gokey, the William Langer and Susan Flickinger Gokey Foundation, Inc., Quentin Kramer, Charles Mortimer, Michael Solkow, James Wilson, as Trustee for the James D. Wilson Trust, and Worthington Enterprises, Inc. (collectively, "Plaintiffs") became aware of the Offering in April or May of 2013 and reviewed an Offering Memorandum describing the terms. *Id.* ¶¶ 36, 39, 42, 44, 47, 50, 53, 57.

**\*3** Plaintiffs contend that the Offering Memorandum contained several misrepresentations. For example, the Memorandum did not disclose that RIM never entered into an agreement with Gunn & Partners to develop the Property and that, accordingly, there was no assignment of the Purchase and Sale Agreement relating the Property to RIM. *Id.* ¶ 30. Thus, the actual intended use of the proceeds was for Bighorn to raise its $3,500,000 equity contribution to form the joint venture and obtain the rights to buy the Property—not to purchase the property. *Id.* Further, the Offering Memorandum falsely stated that Gunn was a managing member of RIM, even though the joint venture had never been formed. *Id.* ¶ 31. Moreover, the Offering Memorandum did not disclose that Bighorn had negotiated at least two other separate deals in Texas alone similar to the one contemplated by the RIM Offering and failed to purchase the property each time, resulting in lawsuits against Bighorn and/or Entler. *Id.* Finally, the Offering Memorandum did not disclose Entler's criminal history, which includes a felony embezzlements charge and a cease and desist order for illegal lending activities. *Id.* ¶ 32.

Plaintiffs all invested in the RIM Offering. They allege that if the above information had been disclosed to them, they would not have done so. *Id.* ¶ 33.

### B. The Release of Funds

Gunn provided the RIM Defendants with wiring instructions to Commonwealth Title to close the sale of the Property on May 13, 2013. *Id.* ¶ 66. [1] That day, Gunn wired his $500,000 equity investment. *Id.* Defendants had raised $1,474,650 from the RIM Offering, which Sichenzia was holding in escrow in its IOLA account. *Id.* However, they did not release the funds on the closing date. In fact, much of Defendants' funds had been released in advance of the closing.

Beginning around April 30, 2013, the RIM Defendants had begun pressuring Carris to allow the release of escrow funds to a RIM Investment Group bank account in Nevada. The RIM Investment Group was a new company controlled by Entler and unrelated to RIM. *Id.* However, the RIM Defendants contacted Sichenzia directly to represent that Carris had authorized the release of funds by that date. *Id.*

On May 8, 2013, Sichenzia, "taking directions from its client, Carris," wired approximately $901,570 in escrow funds to RIM Investment Group. *Id.* On that date, RIM Investment Group, in turn, transferred that money to Blue Acquisition ($550,000 and $75,000)—an entity to which Entler was the sole member—Durango Gravel LLC ($50,000 and $25,000), and Morgan ($50,000). *Id.* ¶ 67. RIM Investment Group also paid over $100,000 to Hughes Airport LLC, Dorsey Partners Property Corp and Standard Ventures. None of these groups were involved with the RIM Project. *Id.*

Sichenzia wired additional funds to RIM Investment Group on May 16, 2013 ($155,391.20), May 23, 2013 ($71,150), and June 4, 2013 ($35,500). *Id.* ¶ 68. Sichenzia did not transfer any money to Commonwealth Title on the May 13, 2013 scheduled closing date. *Id.* Sichenzia also did not notify Plaintiffs that it was releasing escrow funds before the RIM Offering closed. *Id.* ¶ 76.

On May 28, 2013, Gunn notified the RIM Defendants that he had unilaterally negotiated an extension of the purchase option with the seller of the Property. *Id.* ¶ 70. As consideration for an extension of the option period, Gunn requested that Bighorn (Entler) immediately deposit $100,000 with Heritage Title. *Id.* By this point, Sichenzia had released over $1 million dollars to the RIM Defendants. *Id.* However, the RIM Defendants refused to revive any money to revive the purchase option. *Id.* As a result, Gunn terminated the Term Sheet between it and Bighorn, and no longer intended to assign the Purchase and Sale Agreement to RIM. *Id.*

### C. Delivery of the Notes

On their face, the Notes indicate that the Original Issue Date was May 8, 2013. *Id.* ¶ 77. However, Sichenzia actually delivered the Notes to Plaintiffs on or after September 17, 2013. *Id.* At this point, the initial 90-day repayment period had already expired. *Id.* Sichenzia did not provide an explanation for the delay. *Id.*

**\*4** Further, the Notes delivered to Plaintiffs differed from those the Plaintiffs were to receive under the Offering Memorandum, in that page three of the form of Promissory Note was omitted. *Id.* ¶ 78. Page three provided, in relevant part, "This Note is secured by a security interest in all of the assets of the Borrower." *Id.* Additionally, Sichenzia withheld signed Security Agreements from Plaintiffs, although it received the signature pages for the Security Agreements from Morgan. *Id.* ¶ 79.

Plaintiffs contend that, as the drafter of the Notes, Sichenzia knew it had removed the provisions granting Plaintiffs a security interest in RIM's assets. *Id.* ¶ 78. According to Plaintiffs, Sichenzia altered the Notes and withheld the Security Agreements to conceal the fact that RIM never obtained any right to purchase the Property and thus could not construct the apartment community— the purported purpose of this investment. *Id.*

RIM never received any funds from the RIM Offering. *Id.* ¶ 83. Additionally, the FAC notes that upon the closing of the RIM Offering, Entler, Morgan, Carris, and Sichenzia began a new offering to secure funds from additional investors in connection with another Texas real estate development project, which Plaintiffs contend was "a continuation of the RIM Defendants' Ponzi scheme." *Id.*

## II. Procedural History

Plaintiffs initiated this action in the Western District of Texas on May 7, 2015. ECF No. 1. By order dated September 17, 2015, the Honorable Robert L. Pitman directed that this case be transferred to the Southern District of New York, where it was assigned to this Court. ECF No. 31.

Plaintiffs filed a second amended complaint on January 28, 2016. ECF No. 61 ("SAC"). Sichenzia and the RIM Defendants filed motions to dismiss the SAC, and those motions were fully submitted on April 8, 2016. *See* ECF Nos. 64-66, 70-78. On November 22, 2016, this Court granted in part and denied in part RIM Defendants' motion to dismiss, and granted Sichenzia's motion to dismiss. ECF No. 79 ("MTD Opinion"). [2] In its Order, the Court denied Plaintiffs' leave to amend their claims based on (1) the Minimum Offering Amount; (2) the Offering period or RIM's time to purchase the Property; and (3) the Interest Reserve. *Id.* at 34.

On January 12, 2017, Plaintiffs' filed their third amended complaint. ECF No. 87 ("TAC"). RIM Defendants answered the complaint on March 24, 2017. ECF No. 98. On March 15, 2017, Sichenzia filed a motion to dismiss. ECF Nos. 94-96 ("Def Mem"). Plaintiffs responded in opposition on April 14, 2017. ECF No. 107 ("Pl Mem"). Sichenzia replied on April 21, 2017. ECF No. 108 ("Def Reply").

On December 20, 2017, this Court permitted Plaintiffs to file a fourth amended complaint ("FAC"). ECF No. 153. Plaintiffs filed their FAC on December 22, 2017. ECF No. 154. Sichenzia elected to apply its pending motion to dismiss to the FAC, and this Court set a schedule for supplemental briefing to respond to new allegations contained in the FAC. *See* ECF Nos. 152; 153. Sichenzia filed its supplemental brief in support of its motion to dismiss on January 16, 2018. ECF Nos. 156-58 ("Def Supp Mem"). Plaintiffs responded on February 23, 2018. ECF No. 161 ("Pl Supp Mem"). Sichenzia filed its reply brief on March 12, 2018. ECF No. 162 ("Def Supp Reply").

Accordingly, the Court considers this matter fully submitted.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are " 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

**\*5** In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle*

*Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

In addition to the factual allegations in the complaint, the court also may consider " 'the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.' " *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *McCarthy v. Dun & Badsheet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). Where these documents contradict the allegations in a complaint, the court need not accept those conclusory allegations as true. *See I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).

Where, as here, Plaintiffs have alleged fraud claims the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must " '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.' " *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

# DISCUSSION

## I. Law of the Case

As an initial matter, the parties disagree over whether this Court's rulings on the Defendant's motion to dismiss Plaintiffs' SAC constitute law of the case. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" unless the decision "is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 & n.8 (1983). The doctrine is discretionary with regard to a court's own decisions. *Id.*; *accord Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996).

"The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015). The law of the case doctrine "counsels against reconsideration" where amended pleadings are "very similar" to the previous complaint." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Mallela*, No. 00-4293, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002)). In contrast, " 'the law of the case' doctrine does not control" if an amended complaint "alleges materially different and more detailed claims" than the initial complaint. *Kregler v. City of N.Y.*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011). Courts "examine the Amended Complaint to determine whether plaintiffs have cured the former deficiencies." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-2923, 1996 WL 383135 at *1 (S.D.N.Y. July 9, 1996).

**\*6** Accordingly, this Court will examine the FAC and apply the law of the case doctrine to those claims that do not contain new factual allegations.

## II. State Securities Law Violations [3]

Plaintiffs assert that Sichenzia is liable under various states' "Blue Sky" laws. They contend that Sichenzia drafted the Offering Memorandum without speaking with the RIM Defendants, evincing a reckless disregard for the truth of its statements. Pl Supp Mem at 11. Further, Sichenzia's alteration of the Notes and its assumption of the duties as escrow and collateral agent "to maintain complete control over the transaction" establish actual awareness of wrongdoing. *Id.*

Defendant responds that such allegations are insufficient to state a claim under any state's securities laws because Plaintiffs do not plausibly allege that Sichenzia either had actual knowledge of the alleged fraud or solicited investments from Plaintiffs. Def Supp Mem at 8; Def Supp Reply at 5. [4]

The Court will address each state's law in turn.

### A. Texas Securities Claims

#### i. Section 33 of Texas Securities Act

Section 33 of the Texas Securities Act creates liability for sellers, buyers, and nonselling issuers which register when

such individuals make untrue statements of material facts or omit material facts necessary to make the statements not misleading under the circumstances. Vernon's Tex. Civ. Stat. Art. 581-33(A), (B), (C). Additionally, a person who "directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security" is jointly and severally liable. *Id.* at (F).

An "alleged aider can only be held liable if it rendered assistance 'in the face of a perceived risk' that its assistance would facilitate untruthful or illegal activity by the primary violator.' " *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005) (citations omitted). In turn, in order to perceive a risk, "the alleged aider must possess a 'general awareness that his role was part of an overall activity that is improper.' " *Id.* (quoting *Gould v. American-Hawaiian S. S. Co.*, 535 F.2d 761, 780 (3d Cir. 1976)). The Act, however, "does not require the aider to have had direct dealing with the defrauded party." *Id.* at 843.

Here, Plaintiffs do not allege that Sichenzia was a buyer, seller, or nonselling issuer of the securities at issue. Accordingly, it could only be held secondarily liable under Section F. However, Plaintiffs do not plausibly allege that Sichenzia possessed a "general awareness" of the alleged fraud. Allegations that Sichenzia drafted the Offering Memorandum, and that the Memorandum contained misleading statements, are insufficient to show that Sichenzia actually knew the content of that Memorandum was misleading. Indeed, Plaintiffs' own allegations belie such claims: Plaintiffs contend that Sichenzia "did not have any discussions" with Morgan, Entler, or Gunn "about the RIM Offering or the underlying transaction for which the investment funds were sought." Pl Supp Mem at 7. Such allegations make it even less plausible that Sichenzia knew of any alleged fraud. *See, e.g., Johnson v. Norton*, No. 92-6844, 1993 WL 465333, at *18 (S.D.N.Y. Nov. 10, 1993) (citing *Devaney v. Chester*, 813 F.2d 566, 568-69 (2d Cir. 1987)) ("Assuming that the documents at issue contained false and misleading information, plaintiffs do not allege any specific facts as to how and when the attorney defendants learned that the documents contained false and misleading information.").

**ii. Section 27.01 of Texas Business & Commerce Code**

*7 Section 27.01 prohibits the false representation of a material fact that is "made to a person for the purpose of inducing that person to enter into a contract" and "relied on by that person in entering into that contract." Vernon's Tex. Code § 27.01. It also creates liability for one who has actual awareness of another's false representation, fails to disclose the falsity of the representation to the person defrauded, and benefits from the false representation. *Id.* at (d). Actual awareness "may be inferred where objective manifestations indicate that a person acted with actual awareness." *Id.* at (c).

As discussed *supra,* Plaintiffs' allegations are insufficient to show actual awareness.

**B. Florida Securities and Investors Protection Act**

Florida law prohibits any person from employing, in connection with the offer, sale, or purchase of an investment or security, "any device, scheme, or artifice to defraud" or "any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person." Fla. Stat. §§ 517.301(1)(a)(1), (3). To state a claim, the " 'plaintiff must establish the following: (1) a misrepresentation or omission of a material fact; (2) justifiably relied on; (3) that the misrepresentation or omission was made in connection with a purchase or sale of securities [or any investment]; (4) with scienter or reckless disregard as to the truth of the communications; and (5) that the untruth was the direct proximate cause of the loss.' " *Sgaliordich v. Lloyd's Asset Management*, No. 10-3669, 2012 WL 4327283, at *7 (E.D.N.Y. Sept. 20, 2012) (quoting *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 380-81 (S.D. Fla. 1999)). Under this statute, "[s]cienter can be established by 'a showing of mere negligence.' " *Id.* (quoting *Profilet*, 231 B.R. at 380-81).

Nevertheless, a "plaintiff must also satisfy the pleading requirements of Rule 9(b)." *Id.* (citations omitted). With respect to scienter, "even for claims based on mere negligence" the plaintiff must plead "with particularity facts giving rise to a strong inference that a defendant acted with the requisite state of mind." *Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 587 (S.D.N.Y. 2011) (collecting cases).

Section 517.211 creates individual liability under the Florida Securities Act for sellers, directors, officers, partners, or agents if they have "personally participated or

aided in making the sale." Fla. Stat. § 517.211. This statute is "far more restrictive" than federal securities law." *E.F. Hutton & Co., Inc. v. Rousseff*, 537 So.2d 978, 981 (Fla. 1989). Thus, "parties liable under section 517.211 have to be directly involved in a sale of securities." *J.P. Morgan Securities, LLC v. Geveran Investments Ltd.*, 224 So.3d 316, 328 (Fla. Dist. Ct. App. 2017) (citing *Rousseff*, 537 So.2d at 981).

Here, as an initial matter Plaintiffs did not plead the section creating liability under the statute. Second, even if they had done so, the statute does not create liability for Sichenzia as it only drafted the Offering Memorandum; it was not directly involved in selling the securities.

### C. Pennsylvania Securities Act

The Pennsylvania Securities Act makes it unlawful to, "in connection with the offer, sale, or purchase of any security, "employ any device, scheme or artifice to defraud" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 70 Penn. Stat. § 1-401(a), (c). The elements of this cause of action are "(1) that defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the cause of their injury." *Gilliland v. Hergert*, No. 05-01059, 2007 WL 4105223, at *2 (W.D. Penn. Nov. 15, 2017) (citing *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 871 (3d Cir. 2000)). Liability under section 401 is limited to "sellers" of securities. *Gilliland*, 2007 WL 4105223, at *2. Section 501 provides a cause of action for such violations. 70 Penn. Stat. § 1-501.

**\*8** Additionally, Section 503 imposes liability on "every broker-dealer or agent who materially aids in the act or transaction constituting the violation," unless the individual "proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." 70 Penn. Stat. § 1-503. It is unclear whether Section 503 creates its own cause of action, and Pennsylvania courts have ruled both ways on this issue. *See, e.g., Jairett v. First Montauk Securities Corp.*, 153 F. Supp. 2d 562, 577-78 (E.D. Penn. 2001) (collecting cases and allowing private cause of action under section 503); *Schor v. Hope*, No. 91-0443, 1992 WL 22189, at *3-4 (E.D. Penn. Feb. 4, 1992) (collecting cases and declining to imply a cause of action under section 503).

Plaintiffs only pleaded a violation of Section 401. *See* FAC ¶ 109. As an initial matter, Plaintiffs need to plead a claim under Section 501, which creates a cause of action. Regardless, because Plaintiffs do not allege that Sichenzia sold securities, Sichenzia cannot be held primarily liable.

Moreover, Plaintiffs did not raise Section 503 in any of their four amended complaints. They only cite Section 503 in their supplemental opposition brief. *See* Pl Supp Mem at 12. Courts have discretion to consider a previously unraised claim so long as it is supported by the factual allegations in the complaint and consideration will not prejudice defendants. *See In Re Dobrayel*, 287 B.R. 3, 19 (S.D.N.Y. 2002) (collecting cases). However, here the Court will not consider a claim under Section 503. Plaintiffs did not plead a cause of action under this section despite having four chances to amend their complaint; Pennsylvania courts are split as to whether Section 503 even creates its own cause of action; and Defendants may suffer prejudice due to lack of notice.

### D. North Carolina Securities Act

The North Carolina Securities Act prohibits any person from, in connection with the offer, sale, or purchase of any security, employing "any device, scheme, or artifice to defraud" and engaging "in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." N.C. Gen. Stat. § 78A-8(1), (3). Section 78A-56 creates a cause of action for individuals who "offer[ ] or sell[ ] a security." N.C. Gen. Stat. § 78A-56(a). That section also creates secondary liability against any person who "materially aids in the transaction giving rise to liability" if that person "actually knew of the existence of the facts by reason of which the liability is alleged to exist." *Id.* at (c)(2). Claims under Section (c)(2) require a showing of actual knowledge. *Tillery Environmental LLC v. A & D Holdings, Inc.*, No. 17-6525, 2018 WL 802515, at *22 (N.C. Sup. Ct. Feb. 9, 2018).

Here, Plaintiffs did not plead a claim under section 78A-56, which creates liability. Even if they had, Sichenzia did not sell securities and thus cannot be held liable for primary violations under section 78A-8. The FAC further did not plead vicarious liability under section 78A-56(c) (2). In any event, as discussed above Plaintiffs have not pleaded facts sufficient to show actual knowledge of the fraudulent scheme.

### E. North Dakota Securities Act

The North Dakota Securities Act prohibits any person from, in connection with the offer, sale, or purchase of any security, employing "any device, scheme, or artifice to defraud;" making "any untrue statement of a material fact" or "omit[ting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading;" or engaging "in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." N.D. Cent. Code § 10-04-15(2). An attorney may be liable under the Act "if he is an agent representing the broker-dealer" and he "participates or aids in any way the sale or contract for sale." *Ward v. Bullis*, 748 N.W.2d 397, 405 (N.D. 2008). However, "[t]o be liable as an agent [within the statute], the attorney must do more than act as legal counsel, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale." *Id.*

**\*9** Here, Plaintiffs contend that Sichenzia did more than act as an attorney since it assumed roles as escrow agent, collateral agent, closing agent, and custodian of the instruments. Nevertheless, Plaintiffs do not allege that Sichenzia actively participated in selling the securities, as required to trigger liability. *See id.*

### F. Maryland Securities Act

The Maryland Securities Act prohibits any person from, in connection with the offer, sale, or purchase of any security, employing "any device, scheme, or artifice to defraud" and engaging "in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." Md. Code § 11-301(1), (3). The cause of action arises under Md. Code § 11-703. Section (a)(1) imposes liability on people who offer or sell securities. Md. Code § 11-703(a)(1). Additionally, every "broker-dealer or agent who materially aids" in the unlawful conduct can be liable unless they are "able to sustain the burden of proof that [they] did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* at (c)(1).

An attorney "may be liable under the statute, but he must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale." *Baker, Watts & Co. v. Miles & Stockbridge*, 95 Md. App. 145, 167 (Md. Ct.

Special App. 1992). Merely "draft[ing] documents for use in the purchase or sale of securities" is insufficient. *Id.*

Again, the FAC fails to plead the statutory section providing a cause of action and the section providing for indirect liability. Nevertheless, as discussed above Plaintiffs do not plausibly allege that Sichenzia conducted any of the activities that would trigger attorney liability.

Accordingly, Plaintiffs' state securities law claims are dismissed.

### III. Breach of Escrow Agreement

New York courts have repeatedly determined that "[a]n escrow agreement is a contract," and accordingly "plaintiffs cannot impose upon [escrow agents] any obligations in addition to its limited duties under the express terms of its contract." *H & H Acquisition Corp., v. Financial Intranet Holdings*, 669 F. Supp. 2d 351, 363 (S.D.N.Y. 2009) (citations omitted). [5] Thus, Sichenzia may only be held liable for breach of the escrow agreement if Plaintiffs allege facts sufficient to show it violated the express terms of its contract.

Plaintiffs allege that Sichenzia breached the Escrow Agreement by releasing funds without "satisfactory instructions from RIM and 'the placement agent.' " FAC ¶ 152. Specifically, Sichenzia knew that (1) the closing of the property was scheduled for May 13, 2013 and (2) Commonwealth Title was the closing agent who was to receive the funds. *Id.* ¶ 153. Despite such knowledge, Sichenzia released $901,570 to the RIM Investment Group—which was not a party to the escrow agreement —on May 8, 2013—before the scheduled closing of the Property.

**\*10** Plaintiffs' argument fails. The Escrow Agreement provides that Sichenzia was "obligated only for the performance of such duties as are specifically set forth [in the Agreement]." Escrow Agreement, Art. 2.8. As this Court determined in its November 22, 2016 decision, "Sichenzia's only duty with respect to releasing the funds from escrow was to ensure that the 'written instructions' from RIM and John Carris were 'in a form and substance satisfactory to [Sichenzia].' " MTD Opinion at 25. Moreover, as this Court held, "There is nothing in the escrow agreement that requires Sichenzia to deliver

the escrowed funds to a particular account or account holder." *Id.* at 26.

Plaintiffs do not allege facts sufficient to show that Sichenzia violated this obligation. On May 8, 2013, Sichenzia received instructions to distribute funds "[i]n connection with the sale of ... 10% Secured Promissory Notes of RIM San Antonio Acquisition, LLC pursuant to the ... Escrow Agreement." May 8, 2013 Funds Memorandum (ECF No. 95-4.) Sichenzia distributed funds pursuant to those instructions. Plaintiffs have provided no allegations sufficient to determine that these instructions were not "in a form and substance satisfactory."

Therefore, the breach of escrow claim is dismissed.

## IV. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty in New York, a plaintiff must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (collecting cases).

Plaintiffs allege that Sichenzia's fiduciary duties arose from "the role as escrow agent in connection with the RIM offering." FAC ¶ 156. There is no dispute that "[u]nder New York law, an escrow agreement creates a fiduciary relationship between the escrow agent and the parties to the escrow transaction." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 728 (S.D.N.Y. 2014) (collecting cases). The issue is the extent of that duty.

Plaintiffs allege that Sichenzia violated its fiduciary duty as escrow agent by (1) releasing escrow funds without ensuring that it received satisfactory instructions under the Escrow Agreement and (2) paying its legal fees for services provided to Carris out of the escrow funds, which was not disclosed in the Offering Memorandum. *See* FAC ¶¶ 158-59.

### A. Release of Funds

Here, Plaintiffs have not alleged a breach of fiduciary duty. "Given that the fiduciary duties of an escrow agent are born of a contractual relationship, if an escrow agent has 'acted in accordance with its obligations under the escrow agreement, it has not breached its fiduciary duty.' " *Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 729

(collecting cases); *see also Qube Films Ltd. v. Padell*, No. 13-8405, 2016 WL 881128, at *4 (S.D.N.Y. Mar. 1, 2016) ("The scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement."). As discussed above, and as previously determined in this Court's November 22, 2016 opinion, Plaintiffs do not plausibly allege that Sichenzia breached the Escrow Agreement. Accordingly, Plaintiffs' claims for breach of fiduciary duty based on failure to comply with instructions in the escrow agreement must also fail. *See Qube Films Ltd.*, 2016 WL 881128, at *4-5 (dismissing fiduciary claim where escrow agreement explicitly rejected any responsibility by escrow agent to confirm that conditions precedent had been met); *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006) (dismissing fiduciary claim where no evidence of instruction as to how escrow agent would use money).

Moreover, Plaintiffs have not sufficiently alleged that Sichenzia violated any independent fiduciary duty in tort. A "duty to act with care and loyalty independent of the terms of the contract" can "emerge from a relationship of trust and confidence created by a contract, as in the case of a lawyer and client." *Bullmore v. Banc of America Securities LLC*, 485 F. Supp. 2d 464, 470 (S.D.N.Y. 2007) (holding investor had independent duty of care to its clients. The New York Court of Appeals has clarified that "[p]rofessionals, common carriers and bailees for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (N.Y. 1992) (collecting cases). However, "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Id.* (collecting cases). In "disentangling tort and contract claims," courts consider "the nature of the injury, the manner in which the injury occurred, and the resulting harm." *Id.* (collecting cases).

**\*11** Plaintiffs allege that, in addition to serving as escrow agent, Sichenzia assumed duties of care as a collateral agent and closing agent. *See* Pl Supp Mem at 14; FAC ¶ 73; UCC Financing Statement (ECF No. 149-15). First, as Defendant notes, the FAC does not allege that Sichenzia served as the closing agent. *See* Def Supp Reply at 15. Second, Defendant contests that Sichenzia served as collateral agent, noting that the UCC Financing Statement is not signed by Plaintiffs. *See id.* As discussed *supra*, whether Sichenzia served as collateral

agent is a question of fact that cannot be resolved at the motion to dismiss stage. Accordingly, the Court will assume *arguendo* that Sichenzia served as collateral agent.

Regardless, Plaintiffs do not plausibly allege that Sichenzia owed a duty beyond its contractual obligations. Plaintiffs do not allege that Sichenzia ever spoke with or otherwise interacted with the Plaintiffs, let alone occupied a position of "trust or special confidence" with them. *See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Serv's, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (defendant owed no fiduciary duty to plaintiff "distinct from [his] obligation to perform under the [ ] agreement" because he "did not occupy a position of trust or special confidence with regard to [plaintiff] that imposed obligations beyond the express agreements" and "[h]e had little discretion to exercise, his obligations under the contract being straightforward and fixed."); *OSFI Fund II, LLC v. Canadian Imperial Bank of Commerce*, 82 A.D.3d 537, 539 (N.Y. 1st Dep't 2011) (absent the agreement, defendant "would have had no duty to plaintiffs ... [the agreement] explicitly limits the duties of the administrative agent and collateral agent") (internal citations omitted). Moreover, Plaintiffs are essentially seeking to enforce their contractual bargain; they are not alleging any independent injury in tort. *See Sommer*, 79 N. Y.2d at 552.

**B. Payment of Legal Fees**

Second, Plaintiffs allege that Sichenzia breached its fiduciary duty by paying itself out of the escrow funds without disclosure to Plaintiffs in the Offering Memorandum. However, nothing in the Offering Memorandum indicates that Sichenzia owed a fiduciary duty to disclose its payment. Moreover, as Defendant notes Sichenzia paid itself in response to written instructions from Carris and the RIM Defendants. *See* May 8, 2013 Funds Memorandum (ECF No. 95-4).

Accordingly, the breach of fiduciary duty claim is dismissed.

**V. Aiding and Abetting Fraud**

To state a claim for aiding and abetting fraud in New York, a plaintiff must allege "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation and internal quotation marks omitted).

First, to show the existence of a fraud the plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (N.Y. 2009) (citations omitted).

Second, to satisfy the knowledge requirement the complaint must allege "actual knowledge of the fraud as discerned from the surrounding circumstances," not mere "constructive knowledge" based on what one should have known. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (citing *Oster v. Kirschner*, 77 A.D.3d 51, 56 (N.Y. 1st Dep't 2010)).

Finally, substantial assistance " 'occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." ' *SPV Osns Ltd. V. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (quoting *Lerner*, 459 F.3d at 295). Substantial assistance further "requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Id.* (quoting *Cromer Fin. Ltd. v. Berge*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)). That is, "the injury must 'be a direct or reasonably foreseeable result of the conduct.' " *Id.*

**\*12** The heightened pleading standard of Rule 9(b) applies to aiding and abetting fraud claims and, as a result, a plaintiff must plead with particularity facts supporting each element of the claim. *Krys*, 749 F.3d at 129. Although knowledge, as compared to the other elements of an aiding and abetting fraud claim, "may be alleged generally" under Rule 9(b), " 'generally' is merely 'a relative term' that allows knowledge to be pleaded with less particularity than is required for the pleading of fraud; 'generally' is not the equivalent of conclusorily." *Id.* (citations omitted). A plaintiff "must still plead the events which they claim give rise to an inference of knowledge." *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (citations omitted).

**i. Existence of a fraud**

Plaintiffs and the RIM Defendants are currently litigating the underlying fraud claims. For the purposes of this motion, this Court will assume that a fraud existed.

### ii. Knowledge of the fraud

Plaintiffs claim that "Sichenzia knew or was willfully blind to the fact that the RIM Defendants sought to obtain the escrow funds in advance of the closing for the RIM Transaction and closing of the RIM Offering for purposes unrelated to the Property." FAC ¶ 161. Further, Sichenzia "knew the RIM Defendants intended to use the funds for purposes other than the RIM project when it received the instructions to send the escrow funds to a party other than Commonwealth Title which would constitute a fraud on the Plaintiffs." *Id.*

Such allegations are insufficient to show knowledge. Plaintiffs' conclusory assertion that Sichenzia knew or was willfully blind to the fraud is inadequate under the heightened pleading standard for fraud cases. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 25 (N.Y. 1st Dep't 2015) (collecting cases). Moreover, Plaintiffs have not pleaded "the events which they claim give rise to an inference of knowledge." *See Krys*, 749 F.3d at 129. While Plaintiffs have alleged that Sichenzia drafted the Offering Memorandum, they have not adduced specific allegations that Sichenzia actually knew about the RIM Defendants' alleged fraud in connection with that Memorandum. Finally, as discussed *supra* and in this Court's November 2016 decision, Sichenzia's release of the escrow funds, alleged alteration of the Notes, delay in delivering the Notes, and withholding of the Security Agreements is insufficient to show actual knowledge of a scheme to defraud Plaintiffs.

Since Plaintiffs have not plausibly alleged that Sichenzia had knowledge of the alleged fraud, the aiding and abetting fraud claim is dismissed.

## VI. Negligence

In New York, to state a claim for negligence a plaintiff must allege: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citations omitted).

New York law generally enforces contract provisions that absolve a party from negligence, provided, however, a party cannot escape liability for "gross negligence." *See Colnaghi, U.S.A., Ltd. v. Jewelers Protection Serv's, Ltd.*, 81 N.Y.2d 821, 823 (N.Y. 1993). Gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Id.* at 823-24 (quoting *Sommer*, 79 N.Y.2d at 554).

Plaintiffs allege that Sichenzia owed a duty as (1) "escrow agent" and (2) "drafter of the Offering Memorandum." FAC ¶ 167. Additionally, in their supplemental opposition brief, Plaintiffs argue that Sichenzia can be held liable under the "assumed duty" doctrine. Pl Supp Mem at 13.

### A. Negligence Based on Role as Escrow Agent

**\*13** Plaintiffs claim that Sichenzia owed Plaintiffs a duties of "care, honesty and loyalty" and to "comply with the applicable standards of care for ... escrow agents or others holding funds in an IOLA account." FAC ¶ 167. In addition to Sichenzia's alleged misconduct in releasing the escrow funds to an unrelated entity before the closing date, Plaintiffs allege that Sichenzia was grossly negligent with respect to Plaintiff Worthington by releasing its funds from escrow without having received a signed Subscription Agreement from him indicating an agreement to participate in the RIM Offering. *Id.* ¶ 168.

Here, Plaintiffs cannot state a negligence claim based on a duty stemming from Sichenzia's role as escrow agent. Under the terms of the Escrow Agreement, Sichenzia cannot be held liable "while acting in good faith and in the absence of gross negligence, fraud, and willful misconduct." Escrow Agreement, art. 2.8. Plaintiffs' allegations do not plausibly suggest that any of Sichenzia's conduct constituted gross negligence, fraud, or willful misconduct. This Court ruled that nothing in the Escrow Agreement required Sichenzia to confirm that Subscription Agreements were signed before releasing funds from escrow. MTD Opinion at 25. Indeed, as elucidated in that opinion and as discussed *supra*, Plaintiffs have not plausibly alleged that Sichenzia violated any of its duties as escrow agent. Accordingly, Plaintiffs' negligence claims for this conduct must also fail. *See H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 363-64 (S.D.N.Y. 2009) (simultaneously dismissing plaintiff's claims for breach of fiduciary duty and negligence because plaintiff was improperly

attempting to "unilaterally enlarge [defendant's] duties under the contract and then claim that [defendant] was negligent in failing to take these duties on.").

### B. Negligence Based on Role as Drafter of Offering Memorandum

Plaintiffs allege that Sichenzia owed "duties of care, honesty, and loyalty" and "a duty to comply with the applicable standards of care for preparers of Offering Memorandums." FAC ¶ 167. In particular, "[t]he numerous false and misleading statements" and "omissions of material facts in the Offering Memorandum ... were made knowingly or grossly negligently." *Id.*

Under New York law, "a third party, without privity, cannot maintain a claim against an attorney in professional negligence, 'absent fraud, collusion, malicious acts or other special circumstances.' " *Estate of Schneider v. Finmann*, 15 N.Y.3d 306, 308-09 (N.Y. 2010) (citation omitted); *accord Crossland Sav. FSB v. Rockwood Ins. Co.*, 692 F. Supp. 1510, 1514 (S.D.N.Y. 1988) ("New York courts have repeatedly reaffirmed the rule that an attorney may not be held liable in negligence by one with whom he is not in contractual privity.") (collecting cases).

Here, first, Plaintiffs have not alleged privity. Sichenzia represented Carris, not Plaintiffs, in the RIM Offering. Plaintiffs' only contractual connection to Sichenzia is related to the escrow agreement, and this Court has already ruled that Plaintiffs cannot state a claim for negligence with respect to that agreement.

Second, as this Court held *supra*, Plaintiffs have not stated a claim for fraud. Finally, Plaintiffs have not pleaded any other "special circumstances" entitling them to maintain a cause of action for negligence. *See, e.g., AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 5 N.Y.3d 582, 595 (N.Y. 2005) (dismissing negligence claim where no privity and complaint "does not set forth a claim for fraud or collusion or any of the other exceptions to the privity rule"); *Fredriksen v. Fredriksen*, 30 A.D.3d 370, 372 (N.Y. 2nd Dep't 2006) (no claim for negligence against attorney where parties were not in privity and complaint "fails to plead evidentiary facts showing" that Defendants "aided and abetted ... the commission of fraud").

### C. Negligence Based on Assumed Duty

**\*14** "Under New York law anyone who voluntarily assumes a duty can be held liable for negligence in the performance of that duty." *Morgan Stanley & Co. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 256 (S.D.N.Y. 2009). "[T]he question is whether defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing." *Id.* (quoting *Heard v. City of N.Y.*, 82 N.Y.2d 66, 72 (N.Y. 1993)).

Plaintiffs allege that Sichenzia assumed a duty to act as Plaintiffs' escrow and collateral agent. Pl Supp Mem at 13. Defendant asserts that Plaintiffs have not alleged any facts capable of establishing that Sichenzia assumed duties to Plaintiffs at any time. Def Supp Reply at 14-15.

Here, Plaintiffs have not stated a claim under the assumed duty doctrine. Any violations with respect to Sichenzia's role as escrow agent are properly dismissed, as discussed *supra*. Moreover, Plaintiffs do not allege that, in Sichenzia's alleged role as collateral agent, it assumed duties beyond those in the contract. *See OSFI Fund II, LLC v. Canadian Imperial Bank of Commerce*, 82 A.D.3d 537, 539 (N.Y. 1st Dep't 2011) (defendant "did not assume all the duties of an agent under New York law" since the agreement "explicitly limits [defendant's] duties"). Plaintiffs also do not allege facts showing that Sichenzia's actions put them in a "more vulnerable position" than they would have been had another entity operated as collateral agent. More fundamentally, as discussed *supra* Plaintiffs' claims "sound in contract rather than tort." *See id.*

Since Plaintiffs have not alleged that Sichenzia owed them any duty in tort, they cannot state a claim for negligence. *See Gray v. Wackenhut Serv's, Inc.*, 721 F. Supp. 2d 282, 287 (S.D.N.Y. 2010) (quoting *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 341 (N.Y. 1928)) ("Absent a duty of care, there can be no breach thereof and no liability.").

Accordingly, Sichenzia's motion to dismiss all claims against it is GRANTED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 94.

**SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 1581675

Footnotes

1    On at least two occasions, Plaintiffs state that the closing date was May 13, 2015. *See, e.g.,* FAC ¶ 66. The Court
     presumes Plaintiffs intended to write May 13, 2013.

2    To date, defendant John Carris has not appeared in this action.

3    Plaintiffs have withdrawn their Illinois Security Act claim. *See* Pl Supp Mem at 10 n.1.

4    Defendant also contests that Sichenzia served as Collateral Agent. Def Supp Reply at 15. However, that is a question
     of fact that cannot be resolved at the motion to dismiss stage.

5    The escrow agreement giving rise to the relationship between Plaintiffs and Sichenzia includes a choice of law provision
     selecting New York as the governing law and both Plaintiffs and Sichenzia cite to New York law with respect to Plaintiffs'
     common law claims. *See* Escrow Agreement, art. 2.6. Accordingly, the Court will apply New York law to Plaintiffs' common
     law claims.

---

End of Document                                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6489971
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois.
**Urbana Division**

Christopher M. Gilmore, Plaintiff,

v.

Chief Downey, Timothy F. Bukowski, Tom
Dart, and Officer Wilking, Defendants.

No.: 13–2239–JBM–DGB
|
Filed December 10, 2013

**Attorneys and Law Firms**

Christopher M. Gilmore, Chicago, IL, pro se.

**Opinion**

*MERIT REVIEW ORDER*

JOE BILLY MCDADE, U.S. District Judge:

**\*1** This cause is before the Court for a merit review,
pursuant to 28 U.S.C. § 1915A, of Plaintiff Christopher
M. Gilmore's claims.

**I.**

**MERIT REVIEW UNDER 28 U.S.C. § 1915(A)**

Under 28 U.S.C. § 1915(e)(2) and § 1915A, the Court is
required to carefully screen a complaint filed by a plaintiff
who seeks to proceed in forma pauperis. The Court must
dismiss a complaint, or a portion thereof, if the plaintiff
has raised claims that are legally "frivolous or malicious,"
that fails to state a claim upon which relief may be granted,
or that seeks monetary relief from a defendant who is
immune from such relief. *Id.* The test for determining
if an action is frivolous or without merit is whether the
plaintiff can make a rational argument on the law or facts
in support of the claim. *Neitzke v. Williams,* 490 U.S. 319,
325 (1989). A complaint fails to state a claim for relief if the
complaint does not allege "enough facts to state a claim
to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556
U.S. 662, 678–79 (2009).

In reviewing the complaint, the Court accepts the factual
allegations as true and liberally construes them in
plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 651
(7th Cir.2013). Conclusory statements and labels are
insufficient. Fed.R.Civ.P. 8; *Schatz v. Republican State
Leadership Comm.,* 669 F.3d 50, 55 (1st Cir.2012)(holding
that, in order to determine if a complaint states a
plausible claim, the court must take non-conclusory, non-
speculative facts as true, draw all reasonable inferences
in the pleader's favor, and isolate and ignore statements
that simply rehash claim elements or offer only legal
labels and conclusions). Instead, sufficient facts must be
provided to "state a claim for relief that is plausible on its
face." *Alexander v. United States,* 721 F.3d 418, 422 (7th
Cir.2013)(internal quotation omitted).

**II.**

**ANALYSIS**

Gilmore, a pre-trial detainee, has filed the instant suit,
pursuant to 42 U.S.C. § 1983, against Defendants Chief
Downey, Timothy F. Bukowski, Tom Dart, and Officer
Wilking. To state a claim under section 1983, a plaintiff
must allege two elements: (1) the alleged conduct was
committed by a person acting under color of state law;
and (2) the activity deprived a person of rights, privileges,
or immunities secured by the Constitution or laws of the
United States. *Case v. Milewski,* 327 F.3d 564, 566 (7th
Cir.2003); *Gomez v. Toledo,* 446 U.S. 635, 638 (1980)
(citing 42 U.S.C. § 1983).

Gilmore alleges that Defendants Downey and Bukowski
and their staff are "very unprofessional." However, being
unprofessional towards someone does not constitute
a deprivation of that person's rights, privileges, or
immunities secured by the Constitution. As that is the
only claim asserted against Defendants Downey and
Bukowski, they are dismissed as Defendants.

Similarly, Gilmore alleges that Defendant Dart acted
unprofessionally and neglectfully in his treatment of
others in transferring pre-trial detainees to other counties.
Again, being unprofessional does not constitute a
Constitutional deprivation. Moreover, Gilmore does not

2013 WL 6489971

allege that Dart transferred him in violation of any of his constitutional rights. Accordingly, Gilmore fails to state a claim against Defendant Dart upon which relief can be granted, and therefore, Dart is dismissed as a party Defendant.

**\*2** Finally, the Court finds that Gilmore's Complaint fails to state a cause of action against Defendant Officer Wilking. Gilmore alleges that he asked Officer Wilking to see a doctor for his depression and because he was experiencing bad dreams. According to Gilmore, Officer Wilking refused to allow him to see a doctor.

Because Gilmore is a pretrial detainee, his deliberate-indifference claim arises under the Fourteenth Amendment's Due Process Clause, but it is governed by the same standards as a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Smith v. Sangamon County Sheriff's Dept.,* 715 F.3d 188, 191 (7th Cir.2013). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young,* 533 F.3d 505, 509 (7th Cir.2008)(quoting *Greeno v. Daley,* 414 F.3d 645, 652 (7th Cir.2005)); *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir.2008)(same). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.' " *Lee,* 533 F.3d at 509 (quoting *Greeno,* 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan,* 511 U.S. 825, 836–37 (1994)("We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

Gilmore's Complaint against Officer Wilking fails to state a claim for two reasons. First, although he claims that Officer Wilking refused to provide him with medical care, Gilmore's allegation is belied by the attachments to his Complaint. In response to Gilmore's grievance regarding the need for medical attention that he submitted in June

2013 and that Gilmore attached to his Complaint, Officer Wilking responded: "This will be addressed. Medical will be notified." *Exhibit C* to Complaint. Moreover, the grievance that Gilmore submitted in July 2013 and that Gilmore attached to his Complaint was not received by Officer Wilking, nor did he sign it. *Exhibit D* to Complaint.

Even a pro se plaintiff may plead himself out of court. *McCready v. Snyder,* 478 F.3d 827, 830 (7th Cir.2007). When documents attached to a complaint contradict the complaint's allegations, the attachments trump the allegations. *Massey v. Merrill Lynch & Co., Inc.,* 464 F.3d 642, 645 (7th Cir.2006); Fed. R. Civ. Pro. 10(c). Accordingly, Gilmore has failed to allege properly that Officer Wilking refused to provide him with medical care, *i.e.,* Gilmore has failed to allege properly that Officer Wilking deprived him of any of his constitutionally protected rights.

Second, Gilmore failed to allege properly that Officer Wilking acted with a sufficiently culpable state of mind. *Lee,* 533 F.3d at 509. Specifically, Gilmore has failed to allege sufficiently that Officer Wilking understood that Gilmore suffered from a serious medical condition. *Id.* Simply informing a prison official that one is depressed and is worried about his criminal case is insufficient to place that prison official on notice that the prisoner/would-be plaintiff suffers from a serious medical condition in that the condition is not so obvious that even a lay person would perceive the need for a doctor's attention. *Id.* Accordingly, the Court finds that Gilmore's Complaint fails to state a claim against Officer Wilking.

**\*3 IT IS, THEREFORE, ORDERED that:**

1. Plaintiff Christopher M. Gilmore's Complaint is dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Any further amendment to the Complaint would be futile because Plaintiff's claim is not cognizable.

2. This dismissal shall count as one of Plaintiff's three allotted "strikes" pursuant to 28 U.S.C. Section 1915(g).

3. Plaintiff must still pay the full docketing fee of $350 even though his case has been dismissed. The agency having custody of Plaintiff shall continue to make monthly payments to the Clerk of Court as directed in the Court's prior Order.

4. If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R.App. P. 4(a). A motion for leave to appeal in forma pauperis should set forth the issues Plaintiff plans to present on appeal. Fed. R.App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

5. **This case is, therefore, closed, and the clerk is directed to enter a judgment pursuant to Federal Rule of Civil Procedure 58. The Clerk of the Court is directed to record Plaintiff's strike in the three-strike log. All pending motions are denied as moot.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6489971

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3255026
Only the Westlaw citation is currently available.
United States District Court,
M.D. North Carolina.

Richard Gwaltney, Plaintiff,

v.

Dr. David Lithford, et al., Defendants.

1:16CV426
|
Signed 06/13/2016

**Attorneys and Law Firms**

Richard Gwaltney, Kannapolis, NC, pro se.

**Opinion**

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

L. Patrick Auld, United States Magistrate Judge

**\*1** This case comes before the Court on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) in conjunction with his pro se Complaint (Docket Entry 2). The Court will grant Plaintiff's instant Application for the limited purpose of recommending dismissal for lack of subject matter jurisdiction.

### LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its problems. ... In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines ... the action ... is frivolous." 28 U.S.C. § 1915(e)(2). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). In assessing such matters, the Court may "apply common sense," Nasim, 64 F.3d at 954; see also Nagy, 376 F.3d at 256–57 ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition. ... The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)), and consider subject matter jurisdiction as part of the frivolity review, Overstreet v. Colvin, No. 4:13-CV-261, 2014 WL 353684, at \*3 (E.D.N.C. Jan. 30, 2014) (citing Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)) (holding that "[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure")).

" '[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking jurisdiction, here Plaintiff, has the burden of establishing subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction ... is on the plaintiff, the party asserting jurisdiction."). "The complaint must affirmatively allege the grounds for jurisdiction," Overstreet, 2014 WL 353684, at \*3, and the Court must dismiss the action if it determines that subject matter jurisdiction does not exist, Fed. R. Civ. P. 12(h)(3).

### ANALYSIS

**\*2** The Complaint alleges that Plaintiff resides in Kannapolis, North Carolina, and that Defendant Dr. David Lithford resides in Charlotte, North Carolina. (Docket Entry 2 at 1.) Therefore, Plaintiff fails to carry his burden of establishing subject matter jurisdiction through diversity, as Plaintiff and at least one defendant are both residents of North Carolina, circumstances

precluding diversity jurisdiction, see 28 U.S.C. § 1332(a). See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) ( "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."); Sanderlin v. Hutchens, Senter & Britton, P.A., 783 F. Supp. 2d 798, 801 (W.D.N.C. 2011) ("Plaintiffs have not satisfied the complete diversity requirement. Specifically Plaintiffs and Defendant Hutchens, Senter & Britton, P.A. are both citizens of North Carolina.").

Moreover, Plaintiff's Complaint does not assert any claims under the United States Constitution, federal law, or federal treaties, see 28 U.S.C. § 1331 instead, it asserts a state-law claim for medical malpractice, see N.C. Gen. Stat. §§ 90-21.11 et seq. (See Docket Entry 2 at 2 (alleging improper medical treatment); see also Docket Entry 1 at 1 (asserting that "[t]he nature of this action is: [m]edical [m]alpractice"); Docket Entry 3 at 1 (identifying "malpractice" as the cause of action).) [1] Notably, the Complaint alleges no factual matter that would support an inference of state action by Defendants. See Kidwell v. Transportation Commc'ns Int'l Union, 946 F.2d 283,

297 (4th Cir. 1991) (observing that "[s]tate action has been found where the deprivation of constitutional rights has been caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and where the private party charged with the deprivation could be described in all fairness as a state actor" (internal quotation marks and citation omitted)). The Complaint thus, as a matter of law, fails to establish subject matter jurisdiction in federal court, and the obviousness of this defect renders this action legally frivolous under 28 U.S.C. § 1915(e)(2).

**IT IS THEREFORE ORDERED** that Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED** for the limited purpose of entering this recommendation of dismissal.

**IT IS RECOMMENDED** that this action be dismissed for lack of subject matter jurisdiction.

### All Citations

Not Reported in F.Supp.3d, 2016 WL 3255026

Footnotes

1    The Complaint alleges that Defendant(s) allegedly "[s]ent [Plaintiff] home without medication[;] [f]orced [him] to [say] [he] was [b]ipolar[;] [d]id not release [him] for 30 days[;] [p]ut [him] on insulin—[he] lost [his] job." (Docket Entry 2 at 2.) Plaintiff attached a number of documents to the Complaint that seemingly contradict these assertions. (See Docket Entry 2-1.) Specifically, to the extent the Complaint alleges that certain Defendants held Plaintiff against his will for 30 days, the attached documents show that, on November 1, 2015, Plaintiff visited the emergency room seeking treatment for a scratch that he sustained on the left side of his neck during an assault. (Id. at 7.) The documents further establish that doctors discharged Plaintiff less than four hours after admitting him. (Id. (showing admission time of "00:19" and discharge time of "04:02").) Such contradictions further render this action frivolous. See Denton v. Hernandez, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible ....").

2012 WL 4491134
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mrs. Silvia JENKINS, Plaintiff,

v.

ONONDAGA COUNTY SHERIFF'S
DEPARTMENT, Defendant.

No. 5:12–CV–855 (GTS/ATB).
|
June 28, 2012.

**Attorneys and Law Firms**

Silvia Jenkins, pro se.

**Opinion**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** On May 23, 2012, the Clerk sent me the above civil rights complaint, together with an application to proceed *in forma pauperis* (IFP), and a motion for appointment of counsel, filed by *pro se* plaintiff, Silvia Jenkins. (Dkt. Nos.1–3). After reviewing the complaint, I determined that plaintiff met the financial criteria for proceeding IFP, but that her complaint did not state a claim for purposes of 28 U.S.C. § 1915(e)(2)(B)(ii). (Dkt. No. 4).

Rather than recommending dismissal at that time, I granted plaintiff's motion to proceed IFP, for purposes of filing, but ordered plaintiff to file an amended complaint, correcting the deficiencies in the original. *Id.* I allowed plaintiff until June 25, 2012 within which to submit the amended complaint. *Id.* The Clerk of the Court was ordered to send the matter back to me for further review upon submission of an amended complaint or upon expiration of the time for doing so.[1] *Id.* at 7. As of today's date, plaintiff has not filed an amended complaint, nor has she asked for more time to do so, and the Clerk has sent the matter for further review. For the following reasons, this court finds that plaintiff's complaint does not state a claim and will recommend dismissal of the action without prejudice.

### I. *Facts*

Although I reviewed the facts in my prior order, I will summarize them again for purposes of clarity in this Recommendation. Plaintiff claims that on April 28, 2012, she was in the "Booking Department" of the "Onondaga County City [sic] Jail" and that a number of Sheriffs violated plaintiff's civil rights by being mentally and physically abusive. (Compl. ¶ 4; Dkt. No. 1 at 2). Plaintiff claims that her clothes were taken away from her, she was strapped down and placed naked in an empty cell, on "Suicide Watch," until she was released the following day. (*Id.;* Dkt. No. 1 at 2–3). The complaint contains three "Causes of Action." (Dkt. No. 1 at 3). Plaintiff claims that her right to privacy was violated, that she suffered "cruel & unusual punishment without ... remorse, and that she was the subject of verbal and written accusations against her in "those log books." Plaintiff seeks a "full investigation" and payment of her medical and psychological expenses as well as "any other damages." (*Id.* at 4).

### II. *Discussion*

#### A. Legal Standard

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district

court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

 **\*2** To survive dismissal for failure to state a claim, the action must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

### B. Application

As I stated in my May 24, 2012 Order, this is not the first time that this plaintiff has made similar accusations. In 2007, plaintiff sued the "Sheriff's Department," alleging that in 2005, she was assaulted by several unnamed sheriff's deputies in the "booking area." *Jenkins v. Sheriffs Dep't,* 5:07–CV–939 (DNH/GJD). On October 2, 2007, Judge David N. Hurd ordered plaintiff to amend her complaint. *Jenkins v. Sheriffs Dep't,* 5:07–CV–939 (N.D.N.Y. Oct. 2, 2007). Plaintiff may not sue a "department," and to the extent that plaintiff was attempting to name the County as a municipality, Judge Hurd found that "in order to establish liability of a municipality for violation of civil or constitutional rights, a plaintiff must allege that the municipality 'has adopted a 'custom' or 'policy' which is the 'moving force' behind the [violation]." *Id.* at 3 (quoting *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 689 (1978). A municipality may not be held liable based upon respondeat superior alone. *Id.*

Plaintiff filed an amended complaint in Judge Hurd's action, but plaintiff's amendment did not cure the deficiencies, and Judge Hurd dismissed the action. *Jenkins v. Sheriff's Dep't,* 5:07–CV–939 (N.D.N.Y. Nov. 21, 2007). In his order, dismissing the case, Judge Hurd noted that plaintiff had filed eight other actions [2] in the Northern District of New York since 2005, two of which appeared to be related to the same 2005 incident. *Id.* at 1 n. 1 (citing *Jenkins v. Onondaga Sheriff's Dep't,* 5:05–CV–1457 (FJS/GJD); *Jenkins v. Onondaga Sheriff's Dep't,* 9:06–CV–

1092 (TJM/GHL)). Each of these cases was ultimately dismissed due to plaintiff's failure to submit an amended complaint or plaintiff's failure to prosecute her action. *See also Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 5:06–CV–60 (N.D.N.Y. April 14, 2006; Dkt. No. 4) (FJS/GJD) (complaint dismissed after plaintiff failed to file an amended complaint as ordered by the court).

In this case, the original complaint failed to name any of the individual deputy sheriff's who allegedly violated her constitutional rights. As plaintiff has been told several times, under New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued. *Hayes v. County of Sullivan,* Nos. 07–CV–667; 09–CV–2071, 2012 WL 1129373, at \*24 (S.D.N.Y. March 30, 2012) (citing *inter alia Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Plaintiff may *not* sue the Sheriff's Department. To the extent that the court interpreted plaintiff complaint to name the municipality, [3] an entity that may be sued, plaintiff did not state any policy or custom that would allow Onondaga County to be maintained as a defendant in this action. In my May 24, 2012 order, I stated that unless plaintiff amended her action to name either the individual sheriffs responsible for the alleged violations or asserted a policy or custom sufficient to name Onondaga County as a defendant, the complaint could not continue.

 **\*3** Plaintiff has failed to file an amended complaint as she has failed to do in several of her other cases, notwithstanding the court giving her an opportunity to do so. [4] Because she has chosen to ignore the court's order and has failed to submit an amended complaint, the original complaint fails to state a claim, and this court will now recommend dismissal of this action. The court will recommend dismissing the action without prejudice.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the complaint be **DISMISSED WITHOUT PREJUDICE** based upon 28 U.S.C. § 1915(e) (2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4491134

Footnotes

1     I also stated that I would entertain any requests for extension of time.

2     *See also Jenkins v. Commissioner of Social Security Administration,* 5:06–CV–59 (DNH/RFT), *Jenkins v. Emergency Department Upstate University Hospital,* 5:06–CV–60 (FJS/GJD), *Jenkins v. City of Syracuse, et al.,* 5:06–CV–1005 (NAM/GHL), *Jenkins v. Department of Correctional Services, et al.,* 9:06–CV–621 (LEK/GHL), *Jenkins v. Mohawk Correctional Facility, et al,* 9:06–CV–l 167 (NAM/GHL), *Jenkins v. City of Syracuse, et al,* 5:07–CV–930 (NAM/GHL). Plaintiff has brought additional cases in this district since 2007. *See Jenkins v. Murphy,* 5:08–CV–921 (NPM/GHL), *Jenkins v. USA,* 9:09–CV–603 (TJM), *Jenkins v. Syracuse Police Dep't., et al.,* 5:10–CV–1223 (GTS/DEP), *Jenkins v. Rice, et al.,* 5:11–CV–1037 (LEK/ATB).

3     A pro se complaint is interpreted to assert the strongest arguments that it suggests. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

4     The court notes that plaintiff does understand that she must name individual defendants or properly name the municipality. In *Jenkins v. Syracuse Police Dep't,* No. 5:10–CV–1223 (GTS/DEP), a case that has been served and is still pending, plaintiff did name individual police officers who she believed violated her rights.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6697834
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Raymond LIENAU, Plaintiff,
v.
P.O. Angel GARCIA, Individually, P.O.
Donald Peters, Individually, Detective
Timothy Tausz, Individually, Rachel Willgoos,
Individually, and Town of Yorktown, Defendants.

No. 12–CV–6572 (ER).
|
Dec. 19, 2013.

**Opinion**

*OPINION AND ORDER*

RAMOS, District Judge.

**\*1** Plaintiff Raymond Lienau ("Plaintiff" or "Lienau") brings this action pursuant to 42 U.S.C. § 1983 against Officer Angel Garcia ("Garcia"), Officer Donald Peters ("Peters"), Detective Timothy Tausz ("Tausz"), and the Town of Yorktown ("Yorktown") (collectively, the "Municipal Defendants") and Rachel Willgoos ("Willgoos"), alleging unlawful arrest and malicious prosecution. Amended Complaint ("Am.Compl.") (Doc. 15). The Municipal Defendants have cross-claimed against Willgoos for indemnification and contribution. Doc. 17. Currently before the Court is Defendant Willgoos' motion to dismiss the Amended Complaint, as well as the Municipal Defendants' cross-claim. Doc. 18. For the reasons set forth below, Defendant Willgoos' motion to dismiss is GRANTED.

**I. Factual Background**
The following facts are taken from the allegations in the Amended Complaint, which the Court accepts as true for purposes of this motion.[1] *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010).

**a. Background Allegations**
Plaintiff and Willgoos were married in 2000 and had three children together. Am. Compl. ¶ 17. In 2005,

they got divorced and agreed to joint custody of their children, although Plaintiff alleges that he had physical custody of the children the majority of the time. *Id.* ¶ 19. Plaintiff alleges that prior to the commencement of the divorce, Willgoos made numerous false allegations of abuse against him "in attempts to gain custody[s] of protection so that [she] could obtain custody of the couple's children and obtain exclusive use of the marital residence." *Id.* ¶ 22.

On November 7, 2002, Willgoos commenced a proceeding in the Superior Court of Connecticut seeking an order of protection and immediate custody of the couple's children. *Id.* ¶ 23. Willgoos filed an Affidavit for Relief from Abuse ("November 7 Affidavit"), "in which she falsely stated that Plaintiff had for the last eight months engaged in a continually escalating pattern of behavior including verbal, mental and physical abuse." *Id.* Plaintiff alleges that the false allegations "were made with malice and [with] the specific intent to obtain an order which gave [Willgoos] custody of the children," and that at the time that Willgoos filed the Affidavit, there was no evidence of any physical injury corroborating her allegations of abuse. *Id.* ¶¶ 24, 26. As a result of Willgoos' Affidavit, Plaintiff was ordered to surrender to the Norwalk Police Department and was issued a summons to report to the state court. *Id.* ¶ 28. Plaintiff alleges that officers from the Norwalk Police Department contacted his father, who was an active duty detective with the Yorktown Police Department at the time, to inform him of Willgoos' allegations against Plaintiff. *Id.* ¶¶ 27, 29. Plaintiff's father then informed his fellow Yorktown police officers that "his son's wife was making false allegation[s] of abuse" against Plaintiff. *Id.* ¶ 30.

**\*2** Plaintiff alleges that as a result of Willgoos' November 7 Affidavit, the Connecticut state court awarded her an *ex parte* order of protection against Plaintiff. *Id.* ¶ 31. However, immediately prior to the hearing on the order, Willgoos withdrew her Affidavit and the proceeding was dismissed. *Id.* ¶ 32.

Approximately four months later, on March 20, 2003, Willgoos filed another Affidavit for Relief from Abuse ("March 20 Affidavit") in the Superior Court of Connecticut, "in which she falsely alleged that Plaintiff continuously hit her, poked her in the face, shoved her to the floor while she was holding a child and that said events occurred in front of the children." *Id.* ¶ 34. Plaintiff

alleges that Willgoos made the allegations in the Affidavit with knowledge that they were false and "with malice and spite, so that she could again use the legal system as a tool to advantage herself and harm the Plaintiff." *Id.* ¶ 37. As a result of the March 20 Affidavit, the Connecticut state court awarded another order of protection to Willgoos. *Id.* ¶ 38. Plaintiff alleges that Willgoos again withdrew the March 20 Affidavit immediately prior to the hearing on the order of protection, and that the proceeding was therefore dismissed. *Id.* ¶ 39.

Plaintiff further claims that after his father's retirement from the Yorktown Police Department, [2] he remained in contact with various police officers and "made it known to the Yorktown Police officers that [Defendant] Willgoos had repeatedly made false allegations of abuse." *Id.* ¶ 41. Accordingly, Plaintiff alleges that the "lack of merit" of Willgoos' claims "were common knowledge among members of the Yorktown Police Department by virtue of the fact that Plaintiff's father had discussed the fabricated complaints with other officers" at the police department. *Id.* ¶ 42.

Plaintiff further alleges that on or about March 1, 2008, Willgoos attacked Plaintiff with a knife after Willgoos had become enraged that Plaintiff's mother had visited the children. *Id.* ¶ 44. Plaintiff reported the attack to Officer McGuinan at the Yorktown Police Department, however, Officer McGuinan refused to file a report or arrest Willgoos "despite obvious evidence of a knife wound to the Plaintiff's hand." *Id.* ¶ 45. Plaintiff alleges that the following day, Willgoos falsely claimed to the Yorktown Police Department that Plaintiff had assaulted her. *Id.* ¶ 46. Willgoos signed a supporting deposition in which she falsely stated that on March 1, 2008, Plaintiff punched her in the head and face, grabbed her and threw her on the bed and ripped off her shirt, and that that she sustained a bloody nose and bumps on her head. *Id.* ¶ 49. Plaintiff claims that although there was no physical evidence of the alleged assault, he was nevertheless arrested by members of the Yorktown Police Department and charged with assault in the third degree, and that Willgoos obtained an order of protection "based upon [the] fabricated allegations of abuse." *Id.* ¶¶ 48, 52.

**\*3** On March 3, 2008, Willgoos filed a petition in family court requesting full custody of the children, falsely alleging, *inter alia,* that Plaintiff hit her in the head with a closed fist, causing pain in her jaw and a bloody nose,

threatened to break her personal belongings, and then grabbed her and ripped her shirt. *Id.* ¶¶ 53–54; *see also id.* ¶¶ 56–57. Plaintiff alleges that the March 3, 2008 petition was withdrawn prior to the court conducting a hearing "because Willgoos knew the allegations contained therein were meritless and fabricated." *Id.* ¶ 59.

Plaintiff generally claims that prior to February 4, 2010, Willgoos had "perpetrated a pattern, scheme and modus operandi whereby ... she attempted to gain leverage ... in the custody litigation by making numerous baseless allegations of abuse against Plaintiff to various members of law enforcement [,] including the Yorktown Police Department." *Id.* ¶ 60. Plaintiff further alleges that the Municipal Defendants were aware of Willgoos's pattern of making false complaints of abuse in an attempt to gain a tactical advantage in the pending custody action. *Id.* ¶ 61.

### b. The February and April 2010 Arrests and Resulting Prosecution of Plaintiff

On or about January 18, 2010, Willgoos filed an application for sole custody, in which she "again made false allegations that Plaintiff had physically abused her." *Id.* ¶ 63. Plaintiff alleges that the application for custody was denied on February 1, 2010 and that thereafter, Willgoos "became enraged, combative, angered and resentful and devised a plot to seek retribution against the Plaintiff by again making fabricated allegations ... of criminal activity to have Plaintiff falsely arrested/ prosecuted and to enable her to make a further petition for custody." *Id.* ¶¶ 64–65.

On February 4, 2010, Plaintiff dropped the couple's son off for visitation with Willgoos. *Id.* ¶ 68. When Plaintiff called Willgoos' residence later that day to speak with his son, who was sick at the time, he learned that Willgoos had left their son with Willgoos' boyfriend, in violation of a court order that required Willgoos to advise Plaintiff of the names of any individuals who would be babysitting their children. *Id.* ¶¶ 69–71. Upon learning that Willgoos had left their son in the care of her boyfriend, Plaintiff called Willgoos to discuss the situation; however, Plaintiff alleges that in the middle of their conversation, Willgoos hung up on him. *Id.* ¶¶ 72–73. Plaintiff claims that Willgoos knew that when she hung up on Plaintiff, he would call back to continue the conversation, and that each time Plaintiff "reinitiated the call," Willgoos would either answer the call and immediately hang up on him or let the call go to voicemail. *Id.* ¶¶ 76–78.

Although Plaintiff claims that Willgoos "knew that [he] was calling with a legitimate purpose and [that] it was her intentional disconnecting of the calls that prompted Plaintiff to reinitiate the calls," Willgoos nevertheless contacted the Yorktown Police Department and reported to Defendant Garcia that Plaintiff was harassing her. *Id.* ¶¶ 79–80. Plaintiff alleges that Willgoos knowingly reported false information to Garcia and other members of the police department, including that Plaintiff threatened her, that Plaintiff said, "heads will roll, you fucking wait," and that Plaintiff repeatedly called her with no legitimate purpose other than to annoy, harass and alarm her. *Id.* ¶¶ 81, 84. Plaintiff further claims that Willgoos failed to inform Garcia or other officers of the motivation for Plaintiff's calls, i.e., to discuss the care of their sick child, *id.* ¶ 82, and that Plaintiff made the false statements "out of malice, spite and retribution for her application for custody of the children" and "for the specific purpose of instigating Plaintiff's baseless arrest and prosecution," *id.* ¶¶ 83, 85, 94–95.

 **\*4** On or about February 4, 2010, Garcia arrested Plaintiff for aggravated harassment "without a warrant and without probable cause to believe that Plaintiff had committed any crime or violation." *Id.* ¶¶ 88–89. Garcia prepared and signed a misdemeanor information charging Plaintiff with aggravated harassment in the second degree, and forwarded same to the District Attorney's office. *Id.* ¶ 90. Following Plaintiff's arraignment, the court issued an order of protection against him. *Id.* ¶ 101. Plaintiff alleges that by preparing the misdemeanor information, Garcia "initiated and continued a prosecution against the Plaintiff without probable cause to believe the prosecution could proceed and with malice." *Id.* ¶ 91. Additionally, Plaintiff claims that prior to the trial on Plaintiff's claims, Willgoos falsely informed the prosecutor that Plaintiff called her with the specific intent to harass and annoy her and, thus, along with the other Defendants, "induced the prosecutor to initiate and continue a baseless prosecution." *Id.* ¶¶ 96–98, 104.

Plaintiff further claims that on or about April 7, 2010, when Plaintiff was dropping one of his children off with Willgoos, she failed to provide Plaintiff with certain information that she was required to provide pursuant to a court order. *Id.* ¶¶ 115–16. Plaintiff advised Willgoos that he was going to the police department to file a complaint about her refusal to abide by the court order.

*Id.* ¶ 117. Plaintiff alleges that Willgoos subsequently contacted the Yorktown Police Department and falsely complained that Plaintiff had violated an order of protection by threatening her. *Id.* ¶¶ 119–20. Plaintiff alleges that Willgoos conveyed this false information "for the sole purpose of having Plaintiff baselessly arrested and prosecuted for a crime he did not commit in anticipation of pursuing yet another baseless application to the Family Court for sole custody." *Id.* ¶ 121. Based upon Willgoos' "fabricated account and contrived complaint," Defendant Peters arrested Plaintiff "without a warrant and without probable cause" and charged him with criminal contempt in the second degree. *Id.* ¶¶ 124, 127. Peters also prepared and signed a misdemeanor information "which contained materially false statements of fact" and forwarded it to the prosecutor. *Id.* ¶¶ 130–31. Following Plaintiff's arraignment, another order of protection was issued against him. *Id.* ¶ 133. Plaintiff claims that Willgoos again repeated the false allegations against Plaintiff to the prosecutor prior to the case being tried. *Id.* ¶ 134.

The aforementioned charges were resolved in Plaintiff's favor on August 9, 2011 when the Honorable Ilan D. Gilbert dismissed the charges against him. *Id.* ¶¶ 106, 135.

## II. Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc., 624 F.3d at 108*. However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)*). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to state a claim to relief that is plausible on its face.' " *Id.* (citing *Twombly, 550 U.S. at 570*). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly, 550 U.S. at 556*).

## III. Plaintiff Fails to Sufficiently Plead Joint Action Between Willgoos and the Municipal Defendants

 **\*5** Willgoos argues that the Amended Complaint should be dismissed in its entirety as against her because she is not a state actor and Plaintiff has failed to sufficiently

Case 5:18-cv-00255-TJM-TWD   Document 5   Filed 04/12/18   Page 45 of 54

plead "joint action" between Willgoos and the Municipal Defendants. Def.'s Mem. L. (Doc. 19) at 10–13.

In order to state a claim under § 1983, a plaintiff must allege a constitutional violation committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* at 50 (internal quotation marks and citation omitted). However, a plaintiff may maintain a § 1983 claim against a private actor if the plaintiff sufficiently alleges that the private actor "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.") (citation omitted). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Forbes v. City of New York,* No. 05 Civ. 7331(NRB), 2008 WL 3539936, at *5 (S .D.N.Y. Aug. 12, 2008) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir.1999)). To establish joint action, a plaintiff must show "that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Bang v. Utopia Rest.,* 923 F.Supp. 46, 49 (S.D.N.Y.1996). "The Supreme Court has also explained joint action through the concept of a 'meeting of the minds' between law enforcement and private individuals." *Forbes,* 2008 WL 3539936, at *5 (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 158 (1970)).

Moreover, to state a plausible § 1983 claim against a private individual, "[c]onclusory allegations that [the] private individual conspired or took concerted action with state actors will not suffice." *Watson v. Grady,* No. 09 Civ. 3055(KMK), 2010 WL 3835047, at *8 (S.D.N.Y. Sept. 30, 2010) (citations omitted). Rather, a plaintiff must allege "a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself, or that the private actor was jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights." *Id.* (internal quotation marks and brackets omitted) (quoting *Bhatia v. Yale Sch. of Med.,* 347 F. App'x 663, 664–65 (2d Cir.2009) (summary order)); *accord Johnson v. City of New*

*York,* 669 F.Supp.2d 444, 450–51 (S.D.N.Y.2009) ("[A] plaintiff must allege that the private entity and state actors carried out a deliberate, previously agreed upon plan, or that their activity constituted a conspiracy or meeting of the minds .") (internal quotation marks, brackets and citations omitted).

**\*6** Case law in this Circuit is well-established that the provision of information to a police officer—even if that information is false or results in the police taking affirmative action—is insufficient to constitute "joint action" with state actors for purposes of § 1983. *Young v. Suffolk Cnty.,* 705 F.Supp.2d 183, 196 (E.D.N.Y.2010) ("The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.") (citing *Ginsberg,* 189 F.3d at 272) ("[Defendant]'s provision of background information to a police officer does not by itself make [Defendant] a joint participant in state action under § 1983[and] Officer Fitzgerald's active role in attempting to resolve the dispute after [Defendant] requested police assistance in preventing further disturbance also does not, without more, establish that [Defendant] acted under color of law."))); *Valez v.. City of New York,* No. 08 Civ. 3875(DLC), 2008 WL 5329974, at *1, *3 (S.D.N.Y. Dec. 16, 2008) (holding that plaintiff failed to state a claim under § 1983 against his landlords based on allegations that the landlords gave the police false information that plaintiff was planting marijuana in his yard "out of malice and in an effort to get [the plaintiff] ejected from the home he was renting" where plaintiff failed to "allege facts suggesting that defendants and the police had any meeting of the minds or intent to conspire"); *see also Del Col v. Rice,* No. 11 Civ. 5138(MKB), 2012 WL 6589839, at *8 (E.D.N.Y. Dec. 18, 2012) ("In order to satisfy the joint activity requirement, there needs to be something more than an allegation that the private party supplied information, even false information, to the police.") (citing *Stewart v. Victoria's Secret Stores, LLC,* 851 F.Supp.2d 442, 446 (E.D.N.Y.2012) ("A private party supplying information or seeking police assistance 'does not become a state actor ... unless the police officers were improperly influenced or controlled by the private party.' ") (alteration in original) (citations omitted))).

Similarly, if a police officer's actions are based on the officer's own independent judgment, rather than the

directive of the private party, the private party will not be deemed a state actor. *See Young,* 705 F.Supp.2d at 196 (citing *Shapiro v. City of Glen Cove,* 236 F. App'x 645, 647 (2d Cir.2007) ("No evidence supports [Plaintiff]'s contention that [the private defendant] acted jointly with the [municipal] defendants to deprive her of her constitutional rights, and ample evidence shows that the [municipal] officials who searched her house exercised independent judgment rather than acting at [the individual defendant's] direction.")); *Fisk v. Letterman,* 401 F.Supp.2d 362, 377 (S.D.N.Y.2005) ("[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of the private party."); *Serbalik v. Gray,* 27 F.Supp.2d 127, 131–32 (N.D.N.Y .1998) ("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority.") (citations omitted).

**\*7** Here, Willgoos argues that the Amended Complaint fails as a matter of law "because it contains nothing more than conclusory allegations of concerted action between Willgoos and [the] Municipal Defendants." Def.'s Mem. L. at 12. Plaintiff, on the other hand, argues that the Amended Complaint sufficiently alleges that Willgoos acted jointly with the Municipal Defendants "by making malicious and knowing false accusations," thereby instigating Plaintiff's arrest and "jointly act[ing] with the police defendants by fabricating a contrived statement to baselessly continue the prosecution, thereby joining in the exercise of state authority." Pl.'s Mem. L. Opp. (Doc. 21) at 14. In support of his "joint action" theory, however, Plaintiff merely sets forth conclusory allegations of concerted action in the Amended Complaint which, standing alone, are insufficient to state a claim against a private actor under § 1983. Specifically, Plaintiff summarily alleges that at all relevant times, Willgoos "engaged in joint action with the state actor defendants," Am. Compl. ¶ 16, that the Municipal Defendants "were complicit in Rachel Willgoos' scheme to ... victimize Plaintiff," *id.* ¶ 43, that Willgoos was "a willful participant in the false arrest and prosecution of the Plaintiff," *id.* ¶ 85, *see also id.* ¶¶ 98, 123, and that Plaintiff "acted jointly with [Defendants] in causing the arrest of Plaintiff by knowingly and intentionally providing false information that Plaintiff had yelled at her and threatened her," *id.* ¶ 128. Plaintiff fails to allege *any* specific facts or events demonstrating that the Municipal Defendants were in fact

aware of or participants in Willgoos' alleged "scheme," or from which the inference can be drawn that that Willgoos and the Municipal Defendants had a plan or prearrangement to violate Plaintiff's constitutional rights. Indeed, Plaintiff himself *admits* in his opposition papers that merely providing information to a police officer does not transform a private actor into a state actor, and that a private actor only becomes a state actor for § 1983 purposes when she "takes a more active role and jointly engages in action with state actors." Pl.'s Mem. L. Opp. at 14. Here, however, Plaintiff has failed to allege any facts suggesting that Willgoos did, in fact, directly engage with the Municipal Defendants or take an active role in the arrest of Plaintiff.

Moreover, Plaintiff does not allege any facts suggesting that Willgoos exercised control or undue influence over the Municipal Defendants. To the contrary, Plaintiff's allegations establish that Willgoos reported certain incidents regarding Plaintiff to the police, and that the police exercised independent judgment in arresting Plaintiff. Indeed, Plaintiff himself admits that prior to both his arrests by the Municipal Defendants, orders of protection had been issued against him by the state court. *See* Am. Compl. ¶¶ 52 (March 2008 order of protection), 101 (February 2010 order of protection). Moreover, with respect to Plaintiff's February 2010 arrest, Plaintiff *admits* that the incident giving rise to Willgoos' complaint to the police department—i.e., that Plaintiff repeatedly called Willgoos after she had hung up the phone on him-did, in fact, occur, although he claims that he was calling for a legitimate purpose. *See id.* ¶¶ 76–79. Accordingly, even accepting Plaintiff's allegations as true for purposes of Willgoos' motion to dismiss, it was reasonable for the Municipal Defendants to arrest Plaintiff based upon allegations that he had violated the existing orders of protection by harassing and threatening Willgoos.

**\*8** Although Plaintiff alleges that Willgoos' complaints to the police were fabricated, he does not allege that the Municipal Defendants actually *knew* that Willgoos' allegations were false or that Willgoos ever indicated to them that she was making such allegations in order to gain leverage in her custody case. Plaintiff's general allegation that the Municipal Defendants *should* have known that Willgoos' allegations were false because Plaintiff's father had previously told members of the Yorktown Police Department that Willgoos was fabricating allegations against Plaintiff, *id.* ¶¶ 41–43, 61–

2013 WL 6697834

62, 87, 92, 122, is insufficient to state a claim that *Willgoos* and the Municipal Defendants acted pursuant to a deliberate, previously-agreed upon plan to violate Plaintiff's constitutional rights.

The cases upon which Plaintiff relies in support of his argument that Willgoos acted jointly with the Municipal Defendants are distinguishable from the facts at issue here, as they involve allegations of *direct involvement* and *active participation* by the private defendant in the alleged state action. [3] *See, e .g., Anilao v. Spota,* 774 F.Supp.2d 457, 500–02 (E.D.N.Y.2011) (holding that plaintiffs sufficiently alleged "joint action" where private defendants arranged a meeting with the district attorney "for the purpose of ... pressuring [the district attorney] to file an indictment that he would not otherwise have filed against the plaintiffs," where the private defendants and the County defendants subsequently "agreed that the indictment [of plaintiffs] would be procured, in part, through the use of false testimony ... as well as by the withholding of exculpatory evidence," and where the County defendants "agreed to do what was necessary to procure the indictment, for the sole benefit of the [private defendants]") [4]; *Young,* 705 F.Supp.2d at 191, 198–99 (holding that private actor defendants were more than "mere complainants" where plaintiff alleged that defendants "brought garbage, debris, urine, feces and other matters" into the plaintiff's residence while she and her children were absent "in order to create unsanitary, uninhabitable, and unsafe conditions therein," subsequently summoned the police to the residence, "authorized or consented to the search (even though they allegedly lacked such authority), and accompanied the police on the alleged unlawful search itself"); *Watson,* 2010 WL 3835047, at *8 (holding that plaintiff plausibly stated a claim that private defendant was working in concert or conspiring with state actors to maliciously prosecute plaintiff where private defendant worked with state actors "to frame allegations against Plaintiff" and state actors "ignored facts that would exonerate Plaintiff in order to protect [the private defendant]"). [5]

Unlike the private defendants in the aforementioned cases, Willgoos is alleged *only* to have provided information—albeit false information—about Plaintiff to the Municipal Defendants. Other than conclusory allegations that Willgoos acted jointly with the Municipal Defendants,

Plaintiff fails to set forth *any* allegations that Willgoos was directly involved or actively participated in the subsequent arrest and prosecution of Plaintiff. Accordingly, as Plaintiff's conclusory allegations of joint action are insufficient to state a § 1983 claim against Willgoos —a private actor—the Amended Complaint must be dismissed as against Willgoos. [6]

### IV. The Municipal Defendants' Cross–Claim is Dismissed

**\*9** The Municipal Defendants cross-claimed against Willgoos pursuant to CPLR § 3019 [7] and/or for "indemnification and apportionment of responsibility, if any." Doc. 17. Willgoos moves for dismissal of the cross-claim on several bases. *See* Def.'s Mem. L. at 22–24. The Municipal Defendants have not filed any papers in response to Willgoos' motion to dismiss their cross-claim.

The Court finds that dismissal of the Municipal Defendants' cross-claim is warranted. As an initial matter, Plaintiff has failed to state a § 1983 claim against Willgoos, as discussed *infra,* and the Municipal Defendants merely rely on Plaintiff's deficient Amended Complaint in support of their cross-claim for contribution. Dismissal is therefore warranted on that basis alone.

Even assuming *arguendo* that Plaintiff sufficiently stated a § 1983 claim against Willgoos, however, case law in this Circuit is clear that there is no right to contribution or indemnification under § 1983. *See Castro v. Cnty. of Nassau,* 739 F.Supp.2d 153, 184 (E.D.N.Y.2010) ("No right to contribution exists under § 1983. Nor is there a federal right of indemnification under the statute.") (citations omitted); *Mason v. City of New York,* 949 F.Supp. 1068, 1079 (S.D.N.Y.1996) ("[F]ederal law does not establish a right to contribution under Section 1983."). Courts in this Circuit have also consistently held that a defendant cannot incorporate state law claims for contribution or indemnification under § 1983 pursuant to 42 U.S.C. § 1988. [8] *See, e.g., Greene v. City of New York,* No. 08 Civ. 243(RJD)(CLP), 2010 WL 1936224, at *4 (E.D.N.Y. May 12, 2010) ("Even assuming that New York law provides for a right to contribution under these circumstances ... permitting the [Defendant] to invoke a state law right to contribution on Greene's federal claims asserted under Section[ ] 1983 ... would be inconsistent with Congress's purpose of deterring the deprivation of constitutional rights in enacting [that] statute[ ]."); *Crews v. Cnty. of Nassau,* 612 F.Supp.2d 199, 213 (E.D.N.Y.2009

("[T]his Court agrees with the clear majority of courts that, in general, permitting a right of contribution under Section 1983 would conflict with the policies underlying the statute and is, therefore, inapplicable to defendants in Section 1983 actions."); *Mason,* 949 F.Supp. at 1079 ("[C]ontribution among joint tortfeasors in Section 1983 cases would conflict impermissibly with the statutory goal of deterrence and is impermissible under the third prong of the Section 1988 test.").

Accordingly, as the Municipal Defendants' cross-claim against Willgoos relies entirely on Plaintiff's deficient Amended Complaint, and as case law in this Circuit is clear that there is no right to indemnification or contribution under § 1983, the Municipal Defendants' cross-claim is dismissed.

**V. Conclusion**

For the reasons set forth above, Willgoos' motion to dismiss the Amended Complaint and the Municipal Defendants' cross-claim is GRANTED. Accordingly, the only remaining Defendants in this case are the Municipal Defendants, i.e., Officer Angel Garcia, Officer Donald Peters, Detective Timothy Tausz, and the Town of Yorktown. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

**\*10** The remaining parties are directed to appear for a conference on this matter on **Friday, January 24, 2014 at 3:00 pm.**

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6697834

Footnotes

1   The parties dispute whether the Court can consider the documents attached to the Declaration of Courtney Wen (Doc. 20) in determining the sufficiency of Plaintiff's allegations on Willgoos' motion to dismiss. As the Court finds that the allegations contained in the Amended Complaint fail to state a § 1983 claim against Willgoos, *see infra,* the Court need not consider the extraneous evidence attached to Defendant's motion papers.

2   The Amended Complaint does not indicate the date of Plaintiff's father's retirement.

3   Contrary to Plaintiff's contention, in *TADCO Constr. Corp. v. Dormitory Auth. of the State of New York,* 700 F.Supp.2d 253 (E.D.N.Y.2010), the court did not "implicitly [hold] that the alleged actions sufficed to establish action under the color of law." Pl.'s Mem. L. Opp. at 16. Rather, the court did not decide the issue *at all* in light of the defendants failure to "challenge plaintiffs' claim that [they] were acting under color of state law." *TADCO Constr. Corp.,* 700 F.Supp.2d at 262. Plaintiffs' reliance on *Stampf v. Long Island R.R. Auth.,* No. 07 Civ. 3349(SMG), 2011 WL 3235704 (E.D.N.Y. July 28, 2011), is similarly misplaced. In that case, the court considered whether an individual who encouraged the authorities to act may be held liable for malicious prosecution under New York law. *Id.* at * 1. Contrary to Plaintiff's contention, the court *did not* address the question of whether that individual defendant's actions in lying to the police constituted "joint action" sufficient to hold the defendant liable under § 1983. *Id.*

4   As to a second set of private actor defendants, the court in *Anilao* held that allegations that the defendants "filed complaints against plaintiffs with the New York State Education Department and the Suffolk County Police Department" were insufficient to render the private parties "state actors" for purposes of § 1983 liability. *Id.* at 503. Thus, the court found that "in the absence of any allegations that [the private defendants] were more directly involved in the investigation and prosecution of plaintiffs," the § 1983 claims against the private defendants should be dismissed. *Id.*

5   Plaintiff also relies on *Weintraub v. Bd. of Educ. of City of New York,* 423 F.Supp.2d 38, 58 (E.D.N.Y.2006), which contains broad language suggesting that a civilian who makes a false statement to a police officer can be held liable for joint action under Section 1983. *Id.* at 58 ("If a victim makes false statements to the police, with the intent to have an innocent person arrested ... she may not only be held accountable for false imprisonment under state tort law, but under federal law, for invoking the state's power to intentionally violate a citizen's constitutional rights."). However, cases interpreting *Weintraub* have limited its application to the narrow circumstances presented in that case, which involved allegations demonstrating a long-standing vendetta by the private defendant against the plaintiff. *See Samtani v. Cherukuri,* No. 11 Civ. 2159(CBA)(RER), 2012 WL 1657154, at *4 (E.D.N.Y. May 11, 2012) (citing cases), *vacated on other grounds,* 2012 WL 1821413 (E.D.N .Y. May 18, 2012); *see also Thomas v. City of New York,* No. 12 Civ. 5061(FB)(SMG), 2013 WL 3810217, at *4–*5 (E.D.N.Y. July 23, 2013) (holding that "[u]nlike the longstanding vendetta in *Weintraub,* which consisted of 11 acts over more than 1 year, plaintiff alleges just 3 acts occurring within 1 week," and that "even

assuming that the [private] defendants made a false report to the police, bad faith cannot be inferred from [that] act alone"). Moreover, at least one court has questioned whether *Weintraub* was even correctly decided under relevant Supreme Court precedent. *Samtani,* 2012 WL 1657154, at *4. Another case on which Plaintiff relies, *Coakley v. Jaffe,* 49 F.Supp.2d 615 (S.D.N.Y.1999), is similarly distinguishable, as there, the plaintiffs alleged that the private defendants, who conspired to obtain an unwarranted criminal indictment against the plaintiffs, actually worked with the district attorney, whose "connivance" they eventually obtained. *Id.* at 620. The plaintiffs alleged that the district attorney then conducted "a flawed investigation" and purportedly impeded the plaintiffs' ability to defend themselves. *Id.*

6    Willgoos argues in the alternative that dismissal of the Amended Complaint is proper because, even assuming Plaintiff sufficiently alleged joint action, he fails to state a claim for malicious prosecution under New York law. Def.'s Mem. L. at 15. As the Court finds that Plaintiff has failed to allege joint action between Willgoos and the Municipal Defendants, Plaintiff's Amended Complaint is dismissed in its entirety against Willgoos, and it therefore need not address the sufficiency of Plaintiff's underlying allegations of Defendants' constitutional violations.

7    CPLR § 3019(b) states: "(b) Subject of cross-claims. A cross-claim may be any cause of action in favor of one or more defendants or a person whom a defendant represents against one or more defendants, a person whom a defendant represents or a defendant and other persons alleged to be liable. A cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

8    42 U.S.C. § 1988 states: "The jurisdiction in civil ... matters conferred on the district courts by the provisions of [42 U.S.C. § 1983] ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause...."

---

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4758706
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Keith P. LUCAS, Sr., Plaintiff,

v.

Mark RIGGI, Ann M. Grattan, Individually
and in her capacity as an employee of
Village Court of the Village of Caledonia,
Kathy M. Narowski, Individually and in her
capacity as a police officer of the Village of
Caledonia, Village of Caledonia, Defendants.

No. 07-CV-6200L.
|
Oct. 29, 2008.

West KeySummary

1    **Civil Rights**
     👈 **Color of Law;State Action**

A plaintiff failed to allege facts showing that
a judge and a clerk acted under color of
state law, and therefore the plaintiff failed to
state a cognizable civil rights claim against
the judge and clerk. The evidence indicated
that the judge and the clerk were merely
acting as private citizens when they passed
on information concerning the plaintiff to
law enforcement officials, who decided, based
on that information, to arrest the plaintiff.
While the judge and the clerk may have had
official titles, there was no indication that
their actions regarding the plaintiff related to
their duties, or that they abused their positions
in order to procure the plaintiff's arrest. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

Nira T. Kermisch, Rochester, NY, for Plaintiff.

Michael P. McClaren, Webster Szanyi, LLP, Gerard
E. O'Connor, Lippman O'Connor, Buffalo, NY, for
Defendants.

**Opinion**

*DECISION AND ORDER*

DAVID G. LARIMER, District Judge.

**INTRODUCTION**

**\*1**  This is a civil rights action under 42 U.S.C. § 1983
for false arrest and malicious prosecution against a judge,
clerk and police officer of the Village of Caledonia, New
York ("Village"). The Village is also a named defendant.
All defendants, except the police officer, Officer Kathy
Narowski, have moved to dismiss the complaint pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure.

The central issue with respect to defendants' motion is
whether the defendant judge and clerk acted "under color
of state law" when they took the actions they did relative
to the plaintiff, Keith P. Lucas, Sr. ("Lucas"). One of the
elements of any civil rights action under § 1983 is that the
defendant acted under color of state law. *Polk County v.
Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509
(1981). An act that is not taken under color of law-in other
words, "merely private conduct"-is beyond the reach of
§ 1983, "no matter how discriminatory or wrongful" that
conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).
Remedies for such conduct may exist under state law, but
such acts do not give rise to a federal civil rights claim
under § 1983.

**BACKGROUND**

The incident giving rise to this case occurred on May 31,
2005. Lucas was at the Village Hall attempting to resolve
some issues concerning a ticket that he had been issued
over a dog running loose in the Village. There was an
exchange between Lucas and Village Clerk Ann Grattan.
Plaintiff then left and went to a local convenience store
where he was arrested and charged with harassment for
allegedly threatening to kill the judge, Mark Riggi.

According to the complaint, both Riggi and Grattan filed supporting depositions on the date of Lucas's arrest, concerning their interactions with Lucas. Based in part on those depositions, Lucas was charged with several offenses, including a felony charge of making a terrorist threat (based on his alleged threat to kill Judge Riggi). He was prosecuted, eventually went to trial, and was acquitted of all charges on January 15, 2006.

Plaintiff filed the complaint in this action on April 18, 2007. The complaint asserts four causes of action, each for malicious prosecution, against Riggi, Grattan, Narowski, and the Village. Plaintiff seeks several million dollars in compensatory and punitive damages.

## DISCUSSION

### I. Rule 12(c) Standards

Initially, I note that there appears to be some dispute between the parties about the appropriate standards to apply in evaluating a motion to for judgment on the pleadings under Rule 12(c). Those standards are clear and well established, however. In short, they are the same as the standards applicable to motions for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Desiano v. Warner-Lambert & Co.,* 467 F.3d 85, 89 (2d Cir.2006) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)"), *aff'd sub nom. Warner-Lambert Co., LLC v. Kent,* --- U.S. ----, 128 S.Ct. 1168, 170 L.Ed.2d 51 (2008); *accord Concepcion v. City of New York,* No. 05 Civ. 8501, 2008 WL 2020363, at *2 (S.D.N.Y. May 7, 2008).

*2 Under that standard, the Court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). At the same time, however, "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss. *Reddington v. Staten Island Univ. Hosp.,* 511 F.3d 126, 126 (2d Cir.2007).

To defeat a motion to dismiss, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007) (citations omitted). Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 1974. *See also Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 550 (6th Cir.2008) (applying *Twombly* standards to Rule 12(c) motion); *Perez-Acevedo v. Rivero-Cubano,* 520 F.3d 26, 29 (1st Cir.2008) (same); *Toth ex rel. Toth v. Board of Educ., Queens Dist. 25,* No. 07-CV-3239, 2008 WL 4527833, at *3 (E.D.N.Y. Sept. 30, 2008) (same).

### II. Defendants' Motion

The moving defendants contend that dismissal is appropriate because plaintiff cannot establish as a matter of law that the town officials took the actions they did under color of state law. Defendants contend that the judge and clerk were acting not as public officials but as private citizens when they had contact with the police concerning what they perceived to be Lucas's threats against the judge.

The "under color of state law" requirement is taken from the language of § 1983, which provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." The requirement that the defendant have acted under color of state law is jurisdictional. *Polk County,* 454 U.S. at 315.

Simply because an act is taken by a state official, however, does not mean that the act was performed under color of state law. "The law draws a distinction between mere torts of state officials and acts done under color of state law." *Bacon v. Allen,* No. 06-1222, 2007 WL 1851285, at *4 (D.Kan. June 27, 2007) (citing *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)).

In that regard, the Supreme Court has held that "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Polk County,* 454 U.S. at 318 (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85

L.Ed. 1368 (1941)). *See also Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 903 (6th Cir.2004) ("It is the nature of the act performed, not the clothing of the actor or even the status of being on-duty, or off-duty, which determines whether the officer has acted under color of law") (internal quotation marks omitted).

**\*3** In *Polk County,* for example, the Court held that a state public defender did not act under color of state law when providing representation to an indigent client, because the public defender's "assignment entailed functions and obligations in no way dependent on state authority." *Id.* The public defender's representation of criminal defendants, the Court stated, was "essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 319. In reaching that conclusion, the Court made clear that "a public defender's employment relationship with the State" is not determinative of whether he acts under color of state law. *Id.*

Similarly, "it is by now axiomatic that 'under "color" of law means under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.' " *Pitchell v. Callan,* 13 F.3d 545, 547-48 (2d Cir.1994) (quoting *Screws,* 325 U.S. at 111). Discussing that principle, the Second Circuit has stated that

> although no bright line separates actions taken under color of law from personal pursuits, the relevant question in determining whether an action was taken under color of law is not whether the action was part of the defendant's official duties but, rather, whether the action was made possible only because the wrongdoer is clothed with the authority of ... law.

*United States v. Temple,* 447 F.3d 130, 138 (2d Cir.2006) (internal quotation marks and alterations omitted).

A review of other cases indicates that, in general, acts of the type alleged here on the part of Riggi and Grattan-essentially, reporting an actual or perceived crime to the police-do not meet the "color of law" requirement. The Court of Appeals for the Seventh Circuit has expressly held that "[t]o file a criminal complaint with the police is

the act of a private citizen" and hence is not actionable under § 1983. *Johnson v. Miller,* 680 F.2d 39, 40 (7th Cir.1982); *see also Andresen v. Diorio,* 349 F.3d 8, 13 (1st Cir.2003) ("[I]t is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors"); *Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir.1988) (holding that even if private defendant did provide police with false information, the state action requirement for § 1983 liability was not satisfied, and that "[t]he execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action") (internal quotation marks omitted); *Sasso v. Davis,* No. 84 C 6268, 1986 WL 12591, at \*5 (N.D.Ill. Nov.3, 1986) ("A private citizen does not become a state actor just because he reports a crime").

In *Lee v. Patel,* 564 F.Supp. 755 (E.D.Va.1983), for example, the defendant, a motel owner, had filed a complaint and accompanying sworn statements with a city magistrate, resulting in the plaintiffs' arrest for failure to pay rent. Concluding that the defendant's actions had not been taken under color of state law, the court granted the defendant's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The court stated that "the unilateral action by a private person of filing a sworn complaint for an arrest warrant of another person suspected to have committed a crime does not constitute State action or action under color of State law." *Id.* at 760. To hold otherwise, the court added, "would utterly emasculate the distinction between private as distinguished from state conduct ...." *Id.* at 761 (quoting *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972)). *See also Dahlberg v. Becker,* 748 F.2d 85, 93 (2d Cir.1984) (affirming dismissal of § 1983 complaint against plaintiff's ex-wife and her attorneys, on ground that defendants had not acted under color of state law when they presented to a state court an affidavit signed by ex-wife, which allegedly falsely accused plaintiff of failing to make payments required by parties' divorce decree, and which ultimately led to plaintiff's arrest for contempt), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Erb v. Judge,* No. CIV. A. 94-2124, 1994 WL 523209, at \*2-\*3 (E.D.Pa. Sept.23, 1994) (dismissing plaintiff's § 1983 claim under Rule 12(b)(6), on ground that plaintiff could not establish that defendants' filing of a private criminal complaint against plaintiff constituted state action).

**\*4** The fact that the instant case involves statements given to the police by a village judge and clerk does not require a different result here, since it is clear from the complaint that defendants were not acting in those capacities when they performed the acts in question, but rather acted as purely private citizens. An alleged threat was made by plaintiff, and defendants relayed the information they had to law enforcement officers, who made the decision to arrest Lucas. I see their situation as no different from that of any other eyewitness or citizen who relays information to the police which is ultimately used as the basis for an arrest. Surely, all such citizens are not, and clearly should not, be subjected to a civil rights prosecution.

As stated, the Supreme Court in *Polk County* expressly rejected the view that a person's status as a state employee or official determines whether that person acts under color of state law, even if (as is *not* the case here) the acts at issue were taken in the performance of the person's job. *See Polk County,* 454 U.S. at 319. The mere fact that Riggi was a judge, and Grattan a clerk, at the time of the events in question, then, did not transform their acts into state action.

This conclusion finds further support in *Smith v. Avent,* No. 98 C 4389, 1999 WL 33891 (N.D.Ill. Jan.15, 1999). There, the defendant, a police officer, was alleged to have sworn out a false criminal complaint against the plaintiff accusing her of telephone harassment. The plaintiff was subsequently arrested, but the charges were later dropped.

The plaintiff then sued the police officer under § 1983, asserting claims for false arrest and malicious prosecution. The district court granted the defendant's motion to dismiss under Rule 12(b)(6), on the ground that "filing the criminal complaint was not state action and therefore Smith cannot sustain an action under § 1983." 1999 WL 33891, at \*3.

In so ruling, the court stated that plaintiffs' "allegations d[id] not concern police duties," but were "directed at actions taken by Avent as a citizen filing a complaint against another citizen. The fact that she [*i.e.,* defendant] mentioned that she [wa]s a police officer in the complaint is irrelevant." *Id.* at \*2. The court added that "Avent, like any other citizen may, filed a complaint for harassment. Avent's conduct is simply that of a complaining witness;

filing a criminal complaint is an act of a private citizen. It does not involve the exercise of authority granted by the State." *Id.* at \*3 (citing *Johnson,* 680 F.2d at 40).

The same reasoning applies here. Even accepting the truth of the factual allegations of the complaint, appears that Judge Riggi and Clerk Grattan were merely acting as private citizens when they passed on information concerning plaintiff to law enforcement officials, who decided, based on that information, to arrest plaintiff. While Riggi and Grattan may have had official titles, there is no indication that what they did related to their duties, or that they abused their positions in order to procure plaintiff's arrest. Plaintiff therefore has not alleged facts showing that they acted under color of state law, and he has failed to state a cognizable claim against these defendants under § 1983. *Cf. Hughes v. Halifax County School Bd.,* 855 F.2d 183, 186-87 (4th Cir.1988) (finding no state action with respect to state employee's claims against coworkers, and distinguishing cases in which "judges were held to have been acting under color of state authority during [the commission of] injudicious *judicial* acts," because in those cases "the actions complained of were committed while the defendants were purporting to act under the authority vested in them by the state," and "[t]he judges were figuratively and literally clothed in state power") (emphasis added), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989). [1]

**\*5** The action against the Village of Caledonia must also be dismissed. "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior.*'" *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). "In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

Plaintiff has failed to establish that the challenged actions here occurred pursuant to a municipal policy or custom. First of all, as indicated above, I have determined that neither Judge Riggi or Clerk Grattan acted in an official capacity on behalf of the Village, nor is there

any indication that either of them was a policymaker with respect to the arrest of someone for allegedly threatening the life of a judge. They acted as private citizens and, therefore, the Village cannot be responsible for their acts in a civil rights action. *See Chan v. City of New York,* 1 F.3d 96, 106 (2d Cir.) (noting that "[a]n action under § 1983 cannot, of course, be maintained [against a municipality, or any other defendant] unless the challenged conduct was attributable at least in part to a person acting under color of state law"), *cert. denied,* 510 U.S. 978 (1993).

In order to establish a § 1983 claim against a municipality, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). No such link has been shown here. The mere claim that there was a policy or custom does not make it so and the employment status of Riggi and Grattan does not implicate the Village in any way. *See Miqui v. City of New York,* No. 01-CV-4628, 2003 WL 22937690, at *5 (E.D.N.Y. Dec.5, 2003) ("Because [auxiliary city police officer] did not act under color of law, the City ... cannot be held responsible for his private acts").

## CONCLUSION

The motion of defendants, Mark Riggi, Ann Grattan and the Village of Caledonia to dismiss (Dkt.# 8) is granted and the complaint is dismissed as to those defendants.

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2008 WL 4758706

Footnotes

1    I also note that there is no suggestion anywhere in the complaint that Riggi and Grattan conspired with state actors, nor would the facts alleged support such an allegation. *See Dahlberg,* 748 F.2d. at 93 (stating that "[t]he complaint in this case simply alleges that [defendants] acted 'in concert with state and county officials' to imprison plaintiff," and that "[n]o claim is made-and on the facts in the record none could be-that the different state judges actually entered into a conspiracy or had a meeting of the minds with the attorney defendants ... to deprive plaintiff of his liberty"); *Johnson,* 680 F.2d at 40-41 (noting that "[n]o conspiracy between the bank and the officers is alleged," and stating that if mere "consort of action" were "enough to bring the [defendant] within the reach of section 1983, the statute potentially covers all private dealings with the police"); *Erb,* 1994 WL 523209, at *3 (plaintiff could not establish state action under a conspiracy theory because the facts alleged did not show joint action between plaintiffs and a state actor); *Lee,* 564 F.Supp. at 760 (noting that plaintiffs' complaint did not allege a conspiracy or joint action between defendant and a state actor with respect to issuance of warrant for plaintiff's arrest).

© 2018 Thomson Reuters. No claim to original U.S. Government Works.